## C. H. THAYER v. C. HOFFMAN & SON.

1. COMMISSION MERCHANT, *Sale by — Right to Profits.* An agent employed to sell flour on commission is presumed to act for his principal in making sales, unless it clearly appears that it was understood between the parties that the agent was dealing in the particular transaction with the principal on his own account; and where it does not so appear, profits obtained by the agent in the sale of the principal's goods belong to the principal.

2. CORRESPONDENCE, *Identified by Witness on Cross-Examination, in Evidence.* Where all the negotiations between the parties to a case are included in letters and telegrams, and the plaintiff offers a part of the correspondence, after having identified the same by one of the defendants, it is not error for the court to permit the witness, on cross-examination, to identify the balance of the correspondence with relation to the same transaction, and offer the same in evidence in connection with the cross-examination.

*Error from Dickinson District Court.*

THE plaintiff in error, who was plaintiff below, brought suit against the defendants to recover the sum of $442.50, as money had and received by the defendants to the plaintiff's use. The plaintiff is a commission merchant in New Orleans, doing business under the style of C. H. Thayer & Co. His claim is, that on the 29th day of September, 1888, he bought 750 barrels of flour from the defendants; that the flour was sold by him at an advance, and the proceeds, including the plaintiff's profits, were received by the defendants. The correspondence with reference to this particular transaction consists of telegrams and letters, as follows:

"TELEGRAM.
"*Received at* ENTERPRISE, KAS., 9–29, 1888.
"*To C. Hoffman & Son:* Book three cars of Fanchon, five forty-five; two H. S., four ninety. Mailing shipping directions. Express samples immediately.
C. H. THAYER."

To this the defendants answered by letter, as follows:

"ENTERPRISE, KAS., September 29, 1888.
"*C. H. Thayer & Co., New Orleans:* DEAR SIR—Wired you to-night, as follows: Book four cars of Fanchon, five

forty-five; three cars of H. S., at four ninety, and note advance, five sixty-five for Fanchon and five fifteen for H. S. You caught us pretty bad, for the way wheat is going up we cannot replace it; but we will stand it, and try to push it out as fast as we can. We await your shipping directions. Again let us say: Do n't sell to any but gilt-edge parties, Thirty days acceptance against B. of L. One per cent. off for cash. We inclose you quotation confirming telegram.
Yours respectfully,     C. HOFFMAN & SON."

On the same day, Thayer wrote the following letter:

"NEW ORLEANS, September 29, 1888.
"*Messrs. C. Hoffman & Son, Enterprise, Kas.:* GENTLEMEN —Your favors of the 24th and 25th inst. at hand and noted. Smith's flour sold 30 days—same as Voight's. Upon receipt of draft and B. of L., we presented same to Smith for acceptance, but he gave us a check for the amount, taking 5 cents a barrel off, which amount will be settled by us with him, so you can credit us with it. Inclosed find N. Y. exchange for $675, amount of draft and bill. Please acknowledge receipt. What is the matter with samples asked for? Waiting for them patiently. We placed seven cars to-day, and will inclose shipping directions. Could have sold more this evening, but thought it advisable to hold off, owing to advance in Chicago. We always sell on last price received, using judgment in case of advance.     Yours truly,
C. H. THAYER & CO."

The parties had only been dealing with each other a short time. Consignments of flour were solicited by the plaintiff by letter. The first one answered by the defendants, so far as the evidence discloses, is as follows:

"C. H. THAYER & CO., No. 54 MAGAZINE STREET.

"NEW ORLEANS, LA., August 31, 1888.
"*Messrs. C. Hoffman & Son, Enterprise, Kas.:*

"GENTLEMEN—We would respectfully ask you to send us samples, with prices delivered on track in wood, including 10 cents a barrel commission. At the same time solicit consignments, on which we are willing to make cash advances We have a large, safe spot and shipment business, obtaining in both cases highest market prices, giving shipper full benefit of advance in jobbing over round and car-lot prices. Refer

to our cards in *Northwestern* and *Modern Millers.* Awaiting your favors, we remain, yours truly,

C. H. THAYER & Co."

The defendants acknowleged the receipt of the amount for which the flour was sold to the parties to whom it was consigned by direction of the plaintiff, and that the amount received is the amount stated by the plaintiff, but they deny any liability therefor, claiming that the plaintiff was their agent, selling for 10 cents a barrel commission; that this commission has been paid, and their liability to him satisfied. A demurrer to the testimony offered by the plaintiff was sustained. He brings the case to this court.

*Burton & Moore,* for plaintiff in error.

*Stambaugh & Hurd,* for defendants in error.

The opinion of the court was delivered by

ALLEN, J.: As the case-made does not affirmatively show that it contains all the evidence offered at the trial, we can consider only a part of the errors alleged. The first is that the court erred in permitting C. B. Hoffman, who was placed on the witness stand by the plaintiff to identify certain letters and telegrams which were offered in evidence, to identify a number of other letters on cross-examination, and in permitting such other letters to be read in evidence in connection with the cross-examination of the witness. It is only where the court has clearly abused its discretion that a judgment will be reversed on account of the order in which testimony is admitted. The letters identified and read in evidence on cross-examination were clearly competent, and, even if it be conceded that they properly constituted a part of the defense in the case, the judgment could hardly be reversed on account of their admission out of time. But in this case, it is not clear that the court would have abused its discretion if it had required the plaintiff to introduce, as his own testimony, the whole of the correspondence relating to the transaction. The contract between the parties under which the flour was

shipped was made entirely by letters and telegrams, and it is difficult to see how the plaintiff could intro-

**2. Correspondence, identified by witness, on cross examination, in evidence.** duce a part of the writings and withhold the balance, any better than he could offer a part of a contract contained in one connected written instrument. The plaintiff having failed to offer the whole of the correspondence, we think the court committed no error in allowing the defendant to offer the balance in connection with the cross-examination of the witness.

The plaintiff offered the depositions of four witnesses to show, as it is claimed, a custom among commission merchants in New Orleans to purchase goods from parties from whom they were receiving consignments to sell on commission. These depositions were excluded by the court. It is a sufficient answer to this claim that the depositions offered failed to show any established custom in that city which would vary in any manner the ordinary rule of law with reference to the dealings between a principal and his agent. About the most that can be claimed under the showing in the depositions is, that a commission merchant who is engaged in selling merchandise for a correspondent may also purchase merchandise outright from such correspondent. This proposition must be conceded without any proof of custom. In this particular case, the plaintiff seeks to show that the fact of his having ordered the flour without naming the purchasers was notice to the defendants that he bought it on his own account. We think the language of the telegram and the letter not such as to indicate to the defendants that the plaintiff was purchasing on his own account. The telegram simply uses the word "book," which is not shown to have any special meaning in the trade. The letter written by Thayer & Co. on the same day says:

"We placed seven cars to-day, and will inclose shipping directions. Could have sold more this evening, but thought it advisable to hold off, owing to advance in Chicago. We always sell on last price received, using judgment in case of advance."

This language conveys to our minds the impression that the plaintiff had sold the flour as the defendants' agent to other parties, rather than that he was buying on his own account. The letter of the defendants in response to the telegram cautions the plaintiff against selling to any but "gilt-edged" parties. If they understood that the plaintiff was buying on his own account, they certainly would have had no interest in the financial standing of anyone but himself. It is true that, in the subsequent correspondence, there is language used which might indicate that the defendants regarded this flour as sold to the plaintiff, but when the whole correspondence, so far as we have it before us, is construed together, we think the transaction must be held one of agency.

We think it fairly inferable from the record, if not conclusively shown, that the plaintiff received his regular commission of 10 cents a barrel on the sale of this very flour, and he contends that he is entitled to the commission and the difference between the price stated in his order and that at which the flour was sold also, on the ground that the defendants would realize just as much from a sale to himself as to anyone else. This contention is not sound in principle. The employer is entitled to the full benefit of the services of his agent, and the agent can never be permitted to take advantage of the confidential relation in which he stands towards his principal to speculate to his principal's disadvantage. An agent may not order a consignment of his principal's goods, using ambiguous terms, so that the loss may fall on the principal if the market declines, while if it advances he may claim a sale to himself and collect the profits of the transaction. The general rule of law is, that profits resulting from the transactions of the agent belong to the principal. (Story, Ag., § 207.) It is unnecessary, however, to pursue this inquiry further, nor to discuss the distinction urged by counsel between a commission merchant and a broker.

1. Commission merchant, sale by—right to profits.

We think the facts disclosed by the record do not warrant a recovery by the plaintiff. The case failing to show that all

of the evidence is before us, all presumptions are in favor of the ruling of the district court on the demurrer to the evidence.   The proposition urged by counsel, that if there is any evidence in support of the plaintiff's claim the case must go to the jury, has little application where the whole transaction is in writing, as in this case.   It is for the court to construe written instruments.   We find no substantial error in the record, and the judgment is affirmed.

All the Justices concurring.