JOHN A. BUCK & others *vs.* FREDERICK W. LEACH.

Hancock.    Opinion May 29, 1879.

*Deceit.    Compromise settlement.*

A master of a brig, who had been sailing her on shares, represented in a letter to the owners that he was indebted, on a settlement of his accounts, to them in a large sum named, "besides losing his time;" whereupon a claim for a compromise was yielded to: *Held*, that, in action by the owners for deceit, a verdict for the owners is justified if the representations were proved to have been false in fact, known by the defendant to be so, and if made with a design to deceive the plaintiffs, provided they, acting at the time with due care, were deceived and induced to settle as they did, when they otherwise would not have done so.

When a creditor has been induced by deceit of his debtor to accept a part of his debt in full payment, the unpaid portion of the sum due is the measure of damages in an action on the case for the deceit.

ON EXCEPTIONS.

CASE for deceit.

The defendant sailed upon shares the brig L. Warren, belonging to the plaintiffs. He made a settlement of the vessel's accounts at New York, bringing himself indebted to the owners in the sum of $1,431.36. He thereupon wrote the following letter to John A. Buck, agent of the owners, dated January 10, 1875:

"New York January 10th, 1875.    John A. Buck, Esq. : We have done nothing yet in way of charter, hav'nt even had an offer. We are caulking her deck.    Mr. Ward said if we didn't have it done they would cut her rate down.    We have made up the brig's accounts to the time the cargo was discharged here, and it brings me in debt to the brig $1,431.16, besides the second mate's order, Mr. Ward paid $249 ; that is rather hard on me, besides losing my time.    I think under the circumstances, considering how and where I was obliged to take the brig on shares, you and the rest of the owners ought to compromise the matter.    Please give this due consideration.    .    ."

Relying upon the representations contained in the letter, the plaintiffs were thereby induced to compromise and settle their claim

upon the defendant for fifty cents upon the dollar, receiving the sum of $715.68, and giving their receipt for such sum in full. But the plaintiffs were misled by such representations. Sometime after the settlement the plaintiffs ascertained that instead of being the loser represented he had saved up from his share of the earnings the sum of seventeen hundred dollars, which fact and the state of the captain's private accounts were unknown to the plaintiffs when they settled with the defendant; the defendant continued a while in the vessel after such settlement; after demand the suit was brought.

The judge presiding instructed the jury that they might regard the representations sufficient to justify a verdict for the plaintiffs, if proved to have been false in fact, and known by the defendant at the time to be so, and if made with a design to deceive the plaintiffs, provided the plaintiffs were deceived and induced to settle as they did, when they otherwise would not have done so, acting at the time with due and proper care; and that the rule of damage would entitle the plaintiffs to recover in this form of action the unpaid portion of their account to the same extent as they would have been entitled to collect if the receipt had been for the sum actually paid to them instead of in full.

Verdict for plaintiffs; to which rulings the defendant alleged exceptions.

*H. D. Hadlock*, in support of the exceptions, cited *Long v. Woodman*, 58 Maine, 49. *Cooper v. Lovering*, 106 Mass. 79. *Mooney v. Miller*, 102 Mass. 220. *Fisher v. Brown*, 1 Tyler, 387. *People v. Clough*, 17 Wend. 37. *Bishop v. Small*, 63 Maine 13.

*E. Hale & L. A. Emery*, contra.

BARROWS, J. The defendant does not complain that the instructions were in any respect erroneous or defective, if an action for deceit could under any circumstances be maintained on account of such a representation as the defendant made to the plaintiffs, to operate, apparently, on their sympathies and generosity, and induce them to discharge the debt he owed them upon payment of a percentage. He claims that his letter to the plaintiffs

contains only such vague and indefinite appeals to their liberality " as a person desiring to obtain favorable consideration in a settlement would be likely to make, and so plainly so that a person in the use of ordinary care should not be deceived by them."

But the instructions require, and the jury must have found that the representations were proved to have been false in fact and known by the defendant at the time to be so, and that they were made with a design to deceive the plaintiffs, and that plaintiffs were thereby deceived, acting at the time with due and proper care, and induced to settle as they did when they otherwise would not have done so.

The import of the letter is unmistakable. It amounts to an assertion that, upon the settlement of the accounts of the plaintiffs' brig, which he had been sailing on shares for a year or more, the result was that he had lost his time, besides falling heavily in debt to the plaintiffs. The idea evidently intended to be conveyed was that he had nothing in his hands of the earnings of the vessel to meet this indebtedness, and that, as they shared the chances of profit with him, they ought in justice to divide the loss. If the statement was true, the appeal was apparently a reasonable one. But the jury have found it was not true, and that the defendant knew it was not when he made it, and made it with a design to deceive the plaintiffs.

The defendant takes considerable credit to himself that this deception was not accompanied with an assertion that he was unable to pay the debt, and thereupon contends that the false statement did not affect the interest of the plaintiffs, but related to his own losses only, and hence cannot be the foundation of an action if they were foolish enough to believe it.

Perhaps the nearest approach to a legitimate defense is that the fraud was one which ordinary care on the part of the plaintiffs might have detected. But the case is not before us on a motion to set aside the verdict as against evidence; and on that point the jury had proper instructions.

The naked question is whether a false representation as to existing facts under the circumstances proved is actionable, when parties, in the exercise of due care, are deceived by it, and induced,

by an appeal to their liberality based upon falsehood, to surrender their entire claim upon payment of a part only.

Those who argue that swindling a man by an appeal to his benevolence, based upon false and fraudulent statements as to matters of fact, is not actionable, forget that even a downright gift is a contract.

We do not think there is any essential difference in the actionable quality of false and fraudulent representations, whether they are made to induce a man to part with his property, rights or credits from benevolence or from self interest. He who acts upon the faith of the false statement is just as much defrauded in the one case as in the other. Not that every bald lie which a beggar tells at your door, and which you accept because too indifferent to inquire about or consider it before dismissing him with charity, would be a proper foundation for an action. But the cheat escapes the punishment he deserves in such cases, not because his appeal is to the benevolence of the defrauded, but because the latter does not use ordinary care to ascertain the truth before giving. It is not the innocence of the cheat, but the carelessness of the cheated, that defeats the action. That element, as we have seen, is out of this case, being disposed of by the verdict rendered upon testimony not reported.

We hold that, upon common law principles, when one exercising ordinary care has been induced to part with his money or other things of value, including choses in action, by false statements as to matters of fact, made by one who, at the time of making, knows them to be false, with a design to defraud, he has his remedy against the wrong doer, whether the statements are intended to move him by appealing to his self interest, his benevolence, his fears, or his hopes, for himself, or others, including the cheat as well as the rest of mankind. To hold a man civilly responsible for the goods thus wrongfully obtained, it is not necessary to inquire whether he has brought himself within the scope of penal statutes, which are to be strictly construed, or whether he can be allowed to escape, as in *People* v. *Clough*, 17 Wend. 37, the doctrine of which has been doubted. See Big. Ov. Cas. 376.

The gradual corruption of commercial integrity, which more than any other one thing has contributed to bring about the stagnation of business of which many complain, by inducing a general distrust and want of confidence in the results of business enterprise, cannot serve as an excuse to one who, like the defendant, was acting in a fiduciary capacity towards the plaintiffs, for making false statements as to the condition of their business, to secure an advantage for himself in the settlement. The frequency of false representations by debtors to secure compromises of their debts on favorable terms is no defense.

In *Denny* v. *Gilman*, 26 Maine, 149, where the alleged false representations related to the ability of the debtors to meet their payments, the case was held not cognizable in equity because there was a perfect remedy at law; and it was incidentally held that a statement might be literally true and yet be of such a character that those making it might know that it would convey a false idea to the party to whom it was made, and if they did know it and made it with an intention to deceive and induce those to whom it was made to give up a portion of their claim, and the statement did deceive, and the party was defrauded thereby, the literal truth of the statement furnishes no excuse.

But in the case before us it is only by omitting essential parts of the defendant's statement that it can be made to appear even literally true.

The rule for assessing damages was correct, for the same reason that was given in *Stephenson* v. *Thayer*, 63 Maine, 147.

If the business is finally closed upon worse terms for the defendant than he might have secured by a truthful statement, it is due to his own wrongful act.

*Exceptions overruled.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and LIBBEY, JJ., concurred.