### AMORY v. NASON.

(Supreme Court, Appellate Division, First Department. May 8, 1908.)

FRAUD—RIGHT OF ACTION.

> The complaint, showing that plaintiff, having earned a commission for procuring a customer, defendant, agent of the vendors, induced plaintiff to share the commissions with him, by false representations that the vendors had refused to carry out the sale, unless he would do so, stated a cause of action.

> [Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fraud, § 37.]

Appeal from Trial Court.

Action by William N. Amory against Daniel Nason. From a judgment dismissing the complaint, before any testimony was taken, on the ground that it did not state a cause of action, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Parris S. Russell, for appellant.

Daniel Nason (Charles E. Rushmore, of counsel), for respondent.

CLARKE, J.  The complaint alleges: That the defendant was employed and acted as attorney and counsel in certain proceedings to foreclose and sell the property and franchises of the Jerome Park Railroad Company, and was likewise agent and acted as attorney for the owners of a large majority of stock and bonds of the company in obtaining a purchaser therefor at private sale.  That, as such attorney and agent, he entered into an agreement with the plaintiff, whereby the defendant agreed to sell and deliver to the plaintiff at his option the stock and bonds of said railroad at an agreed price of $25,000, at which price the defendant stated that he was authorized to sell such stocks and bonds; and further agreed that, if this plaintiff produced a purchaser other than plaintiff ready and willing to buy at a price in excess of $25,000, he was authorized and would sell and deliver said stocks and bonds to such purchaser and allow and pay to plaintiff, as his profit and compensation, any sum realized in excess of such selling price of $25,000.  That thereupon the plaintiff devoted his time and efforts to sell such property, and produced a purchaser ready and willing to buy said stocks and bonds and pay therefor the sum of $55,000, and at the same time plaintiff disclosed to defendant the name of said purchaser and the amount to be paid, and demanded of defendant that he fulfill his agreement as aforesaid and deliver said stocks and bonds to such purchaser, and to pay plaintiff the profit and compensation of $30,000, as agreed, and to which this plaintiff thereby became entitled. That thereafter, with intent to defraud and deceive this plaintiff into consenting to share such profits, the defendant falsely and fraudulently stated and represented to this plaintiff that he had explained the situation fully to his clients and principals, had returned all fees received from them, and had waived and refused the sum of $1,000, and all other future fee or compensation from such clients and the principals, and had severed and terminated all relations either of attorney or agent, with the owners of such stocks or bonds, and was in a position to co-operate with this plaintiff and act as his attorney, in carrying through such transaction, and could act in good faith and free from any duty, influence, or interest adverse to his duty to, and the interests of, this plaintiff.  That the owners of said stocks and bonds had stated and assured defendant that they would sell said stocks and bonds to this plaintiff, or any other purchaser procured by him, on substantially the terms originally agreed on, and allow him to retain his profits, if this plaintiff would share said profits with the defendant; but his clients and principals had further stated that they would otherwise refuse to do so, and no sale would or could be effected, except through co-operation and with the assistance of the defendant.  That plaintiff believed said representations to be true, and relied thereon, and was thereby induced to and did agree with the defendant to retain him as agent and attorney, and did retain the defendant as his agent and attorney to act for plaintiff in carrying on said negotiations, and allowed him to transact such business in defendant's name and retain as his compensation the sum so demanded by him, amounting as a total to the

sum of $15,850. That the deal went through, and defendant has retained and refused to pay over $15,850, though demanded. That the representations and statements of defendant, as aforesaid, were false, and were known by the defendant when made to be false, and were made with intent to deceive and defraud plaintiff; and on the contrary, defendant did not, and had not, explained the situation to his clients and principals, and had concealed and suppressed the facts and the agreement made with this plaintiff, the profit or compensation to be made thereby, and that defendant was to share in such profit and receive a fee or compensation from this plaintiff. That defendant did not either return, refuse, or waive a fee of $1,000, or any other fee or compensation, and had not severed or terminated his relation as attorney and agent with the owners of such stock and bonds, and was not in a position to co-operate with this plaintiff and as his attorney and agent in good faith and free from any duty, influence, or interest adverse to the interests of this plaintiff; and the clients or principals of defendant never stated to, nor assured defendant, that they would complete the sale and allow this plaintiff to receive such profit, if plaintiff would share said profit with defendant, but would otherwise refuse to sell such property. At the opening of the case, a motion was made to dismiss the complaint, on the ground that the complaint failed to state a cause of action against the defendant, which motion having been granted, the plaintiff appeals.

The argument of the respondent is that the complaint sets up a complete cause of action to recover by a broker an agreed upon compensation for producing a purchaser ready, willing, and able to perform upon the terms propounded by the seller; that, having so performed the agreement upon his part, the obligation of the seller became fixed, and the broker was entitled to his compensation, and the courts were open to him to enforce the said agreement; that, if thereafter he chose to divide the fees which he had earned with the defendant, it was a voluntary and gratuitous payment upon his part; and that he has no standing in court to recover back from the defendant the amount so voluntarily paid to him. He cites as his main reliance Doyle v. Rector, etc., of Trinity Church, 133 N. Y. 372, 31 N. E. 221. That case, as I read it, does not bear upon the controversy here presented. No question of good faith or deceit or fraud was there involved. In that case, the court held that plaintiff's assignor, after full performance of his contract, having with full knowledge of the facts voluntarily performed certain other work without any promise on defendant's part to pay therefor, he could not recover. "By acquiescing in these terms and voluntarily doing the work he must be held in law to have agreed to give his work to the defendant." "If one agrees to work for another for nothing, he may afterward refuse to work; but if he voluntarily performs his promise and does the work, he cannot afterward compel payment for it."

The facts in the case at bar are entirely different. This is not an action against the sellers of the property for the amount of the broker's commission where with full knowledge of all the facts the plaintiff had subsequently made an agreement to satisfy his claim upon receipt of one-half thereof. It is a claim against the attorney and agent of

those sellers who, the sale not having been completed, induced the plaintiff to give up to him one-half of his commissions which had been earned, upon the false representations that the principals had refused to carry out the sale unless the commissions were divided with the defendant. The plaintiff parted with a right, he gave up $15,850, not voluntarily, upon knowledge of the facts, as an honest gift, but induced by fraud, deceit, and false representations. I know of no reason why a gift induced by fraud, deceit, and misrepresentations may not be recovered as well as the payment of a sum of money upon a claim of right. The plaintiff parted with a valuable right moved by the fraud and deceit of the defendant. His reasons for doing so were obviously to insure the carrying out of a deal not yet consummated, to avoid the uncertainty of litigation depending upon oral evidence, to acquire a quick realization rather than a lawsuit. The essential constitutents of an action for fraud and deceit are "representation, falsity, scienter, deception, and injury." Brackett v. Griswold, 112 N. Y. 454, 467, 20 N. E. 376. Every one of these elements are set forth in the complaint.

In 14 Am. & Eng. Enc. 143, it is said:

"The fact that the action of a person to whom false and fraudulent representations are made proceeds from benevolence, and not from self-interest, does not prevent him from maintaining an action for deceit provided the false representations induced him to act. Buck v. Leach, 69 Me. 484, and see Wessels v. Carr, 15 App. Div. 360, 44 N. Y. Supp. 114."

In the latter case a complaint had been demurred to which alleged that the plaintiff recovered a judgment against the defendant for $1,237.49 which was still unpaid and unsatisfied. On plaintiff endeavoring to collect said judgment, the defendant willfully, intentionally, and falsely represented that he was a poor man and could not pay a dollar of his debts, but that if plaintiff would accept $250 in full settlement of said judgment, and give defendant a release from all obligation under the said judgment, he would procure a party to take an assignment of said judgment for the said sum; that, relying upon the statement of the defendant in regard to his inability to pay the said judgment, the plaintiff accepted the defendant's offer, gave the defendant a release, and made an assignment of the said judgment to one Mangels; that the $250 was paid, not by Mangels, but by the defendant; that the assignment to Mangels was intended to deceive plaintiff into believing that the defendant was a poor man and unable to pay the judgment, and the assignment was for the benefit of the defendant; that the representation of defendant in regard to his inability to pay said judgment was false and made with the intention of deceiving and defrauding the plaintiff; that, in fact, the defendant was a man of means and able to pay the said judgment in full; and that by reason of the premises the plaintiff has suffered damage in the sum of $1,500. O'Brien, J., said:

"The essential constituents of an action for fraud are representations of falsity, scienter, deception, and injury. The complaint contains all these elements. The only question that can arise is whether the character of the representations, if proved, is of a sufficiently grave nature to entitle the plaintiff to relief. In other words, will a false and fraudulent representation, made with intent to induce a compromise, that one is poor and unable to pay

his debts, when in fact he is able, justify an action for damages? Of course, if the fraud is sufficiently grave, the release and assignment present no insuperable barrier to a recovery.  *  *  *  If such representations were, as alleged, false and untrue and fraudulently made, we think they are sufficient."

"Freedom of will and good faith are essential to the validity of a gift as in the case of contracts generally. Where the donor has been induced to make a gift through force, fraud, or undue influence, the gift may be set aside." 14 Am. & Eng. Enc. 1011.

"The rule is well recognized that a gift procured through means of fraud, duress, or undue influence brought to bear upon the donor is void." 20 Cyc. 1217.

The complaint states facts sufficient to constitute a cause of action. It follows therefore that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.