# L. T. GUILD v. A. Y. MORE.

## (155 N. W. 44.)

**Complaint — cause of action — insufficient facts stated — assailed on trial — objection to evidence — liberal construction.**

1. A complaint assailed for the first time at the trial by an objection to the introduction of evidence on the ground that it fails to state facts sufficient to constitute a cause of action will be liberally construed.

**Fraud and deceit — damages — action for — measure of — allegations.**

2. In an action to recover general damages for fraud and deceit, it is not necessary to allege the measure of damages.

**Deception — wilful — injury — position — change of — damages.**

3. One who wilfully deceives another with intent to induce him to alter his position to his injury is liable, in an action of deceit, for any damage which the injured party suffers thereby.

**Deceit — action for — false representations — inducement to contract — actionable fraud — legal right — surrender of.**

4. To maintain an action for deceit it is not necessary that the false representations should have been an inducement to a contract afterwards consummated; but, if the essential elements of actionable fraud are present, such action will lie for any false representation relied on by the plaintiff, whereby he was induced, to his injury, to part with property or surrender some legal right.

**Contract — repudiation of — fraud — damages — action — tender back — property — value.**

5. The defrauded party, on discovery of the fraud, may affirm the transaction, keep whatever property or advantage he has derived under it, and recover in an action of deceit the damages caused by the fraud; or he may, within a reasonable time after discovery of the fraud, repudiate the contract, and, tendering back what he has received under it, recover what he has parted with, or its value.

**Deceit — action for — damages — retention of property — transaction— affirmance.**

6. The defrauded party, by retaining the property, and bringing an action of deceit for the damages sustained by reason of the fraud practised upon him, thereby affirms the transaction.

---

Note.—On the question of necessity of proving fraud in civil action, see note in 33 L.R.A.(N.S.) 837.

And on the general question on whom rests the burden of proof, see notes in 28 Am. Rep. 308; 33 Am. Rep. 736; and 37 Am. Rep. 148.

**Contract — affirmed — rescinded — fraud — misrepresentations — knowledge of facts — payment — proof — limit of.**

7. The transaction must be affirmed or rescinded as a whole. And in an action wherein plaintiff by fraudulent representations was first induced to sign an executory contract for the purchase of certain property, and subsequently, by further fraudulent representations without knowledge of the fraud, induced to make further and final payment, he will not be restricted to proof of false representations preceding the date of the executory contract, but will be permitted to show representations made up to the time he made final payment and received the property purchased.

**Written instrument — valid existence — delivery — parties — intention of.**

8. A written instrument has no valid existence until delivered in accordance with the intention of the parties.

**Intent — guilty knowledge — material ingredient — facts — evidence.**

9. Wherever the intent or guilty knowledge of a party is a material ingredient in the case, any facts logically tending to establish such intent or knowledge are proper evidence.

**Evidence — letters — series of — introduction — whole correspondence — offered — relating to same transaction.**

10. Where one party introduces in evidence one or more of a series of letters written by the party sought to be charged, the latter may offer the remainder of the correspondence relating to the transaction in question.

**Letter — offered — reference to other letter — inclosure — evidence — admissibility.**

11. When a letter so offered refers to another letter inclosed therewith, the letter so inclosed and referred to is also admissible, provided the reference is such as to make it apparent that the latter is necessary to a full understanding of the former.

**Error — evidence — pleadings — issues — facts.**

12. No error can be predicated upon the admission of competent evidence bearing directly on an issue of fact presented by the pleadings.

**Instructions — request for — judgment roll — no part of review — supreme court — statement of case.**

13. Requests for instructions do not constitute part of the judgment roll, and hence, cannot be reviewed on appeal unless incorporated in the statement of the case.

**Evidence — preponderance of — honesty — good faith — presumption — instructions — theory.**

14. A preponderance of the evidence, after making due allowance for the presumption in favor of honesty and good faith, is sufficient in ordinary cases to establish a charge of fraud. And instructions to the jury based upon this theory are held to be not erroneous in the case at bar.

32 N. D.—28.

**Burden of proof — evidence — weight of — determined — pleadings — shifting.**

15. The term "burden of proof" means the obligation imposed upon a party who alleges a fact or set of facts, to establish the existence thereof by a weight of evidence legally sufficient, first to destroy the equilibrium, and, second, to overbalance any weight of evidence produced by the other party. The burden of proof is determined by the pleadings, and never shifts, but must be carried by the responsible party throughout the case.

**Burden of proof — prima facie case — trial — evidence — shifts when.**

16. The phrase "burden of evidence" means that logical necessity which rests on a party at any particular time during a trial to create a prima facie case in his own favor, or to overthrow one when created against him. The burden of evidence has no necessary connection with the pleadings, but is determined by the progress of the trial, and shifts to one party when the other party has produced sufficient evidence to be entitled as a matter of law to a ruling in his favor.

**Deceit — action for — affirmative — defense — fraud — books — examination of — burden of proof — preponderance of proof — complaint — allegations of.**

17. In an action of deceit, wherein it is asserted as an affirmative defense that plaintiff, before the consummation of the fraud, made an examination of the books of the concern, and hence know or should have known the real state of affairs; and that therefore, even though it be true that plaintiff was first induced by material misrepresentations to contract, still plaintiff did not rely thereon, but relied on his own investigation; an instruction upon such defense that the burden of proving that the representations were not relied on is on the person who has been proved guilty of material misrepresentation, is not erroneous as placing the burden of proof upon the defendant to disprove plaintiff's reliance upon the false representations; the court having, also, charged that plaintiff was required to establish, by a preponderance of the evidence, all the material allegations in his complaint, including his reliance upon the false representations.

**False representations — materiality — question of fact — for jury.**

18. Ordinarily the question of materiality of a false representation is one of fact to be determined by the jury.

**Deceit — action for — allegations — proof of part.**

19. In an action of deceit it is not necessary for plaintiff to prove all the fraudulent misrepresentations alleged; it is sufficient if he proves one or more of them, and that those so proved were relied upon to his damage.

**Action — merits — questions — answers — verdict — issues — judgment.**

20. When the merits of an action have been determined by special answers to questions submitted, the verdict will not be held defective by reason of the

fact that the jury made findings on immaterial issues framed by the pleadings, where such immaterial findings cannot in any way qualify, limit, or affect the answers upon which the right of either of the parties to a judgment in his favor is made clear.

**Complaint — contents — immaterial allegations — objections to — raised after trial and verdict.**

21. An objection that a complaint contains irrelevant and immaterial allegations cannot be raised for the first time after trial and verdict.

**Findings — evidence — insufficiency of — to sustain — appeal — first raised on.**

22. Insufficiency of the evidence to sustain the findings of a jury cannot be raised for the first time on the argument in the appellate court.

**Argument — error on — jury — facts constituting — burden of showing.**

23. A party predicating error upon improper argument to the jury has the burden of showing affirmatively, by the record presented to the appellate court, the facts constituting such error.

**Damages — amount of — computation.**

24. Amount of damages as computed by trial court *held* correct.

Opinion filed October 9, 1915. Rehearing denied November 29, 1915.

Appeal from a judgment of the District Court of Cass County, *Pollock,* J. Defendant appeals.

Affirmed.

*A. W. Fowler* and *Pollock & Pollock,* for appellant.

"A party cannot be defrauded in being induced to do what good faith and a proper observance of his promises make it his duty to do." Marsh v. Cook, 32 N. J. Eq. 262; Herring v. Draper, 2 Houst. (Del.) 158; Farmers' Stock Breeding Asso. v. Scott, 53 Kan. 534, 36 Pac. 978; Faribault v. Sater, 13 Minn. 223, Gil. 210; Miller v. Layne & B. Co. — Tex. Civ. App. —, 151 S. W. 341; Randall v. Hazelton, 12 Allen, 412; Smith v. Chadwick, L. R. 9 App. Cas. 187, 53 L. J. Ch. N. S. 873, 50 L. T. N. S. 697, 32 Week. Rep. 687, 48 J. P. 644.

"Novation is the substitution of a new obligation for an existing one." Comp. Laws 1913, §§ 5829–5831; Re Ransford, 115 C. C. A. 560, 194 Fed. 658, 29 Cyc. 1130.

The burden of proof of novation rests upon the party asserting it. 29 Cyc. 1139; Schafer v. Olson, 24 N. D. 542, 43 L.R.A.(N.S.) 762, 139 N. W. 983, Ann. Cas. 1915C, 653.

It is never presumed, and the intention to create must be clear. 29

Cyc. 1138, and cases in note 68; J. I. Case Threshing Mach. Co. v. Olson, 10 N. D. 170, 86 N. W. 718.

A special verdict must contain all the ultimate facts upon which the law is to arise and the judgment of the court to rest. Failing in this, it will not support any judgment. Sherman v. Menominee River Lumber Co. 77 Wis. 14, 45 N. W. 1079; Beare v. Wright, 14 N. D. 26, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057; Hart v. West Side R. Co. 86 Wis. 483, 57 N. W. 91, 7 Am. Neg. Cas. 277; Wilson v. Commercial Union Ins. Co. 15 S. D. 322, 89 N. W. 649; J. H. Clark Co. v. Rice, 127 Wis. 451, 106 N. W. 231, 7 Ann. Cas. 505; State v. Hanner, 24 L.R.A.(N.S.) 6, and cases cited; Moore v. Moore, 67 Tex. 293, 3 S. W. 284; Bartow v. Northern Assur. Co. 10 S. D. 132, 72 N. W. 86; Bibb v. Hall, 101 Ala. 79, 14 So. 98; Carter v. Dublin Bkg. Co. 104 Ga. 569, 31 S. E. 407; Chicago & N. W. R. Co. v. Dunleavy, 129 Ill. 132, 22 N. E. 15; Rarey v. Lee, 16 Ind. App. 121, 44 N. E. 318; Ward v. Cochran, 150 U. S. 597, 37 L. ed. 1195, 14 Sup. Ct. Rep. 230; Morrison v. Lee, 13 N. D. 591, 102 N. W. 223.

Nothing can be taken by implication or intendment to support the special verdict; it must show in and of itself a legal conclusion of liability. Garfield v. Knights Ferry & T. M. Water Co. 17 Cal. 510, cases cited in note to State v. Hanner, 24 L.R.A.(N.S.) 8.

The duty of preparing the verdict and of framing the issues made by the pleadings rests solely with the court. Schumaker v. Heinemann, 99 Wis. 251, 74 N. W. 785; Wilson v. Commercial Union Ins. Co. 15 S. D. 322, 89 N. W. 649; Cullen v. Hanisck, 114 Wis. 24, 89 N. W. 900; Bartow v. Northern Assur. Co. 10 S. D. 132, 72 N. W. 86; Moore v. Moore, 67 Tex. 293, 3 S. W. 284.

Where the court fails to submit all the issues, such omission is not waived by failure of counsel to request the submission of additional questions. Hildman v. Phillips, 106 Wis. 611, 82 N. W. 566, 7 Am. Neg. Rep. 705; Sherman v. Menominee River Lumber Co. 77 Wis. 14, 45 N. W. 1079; Orttel v. Chicago, M. & St. P. R. Co. 89 Wis. 127, 61 N. W. 289; McFetridge v. American F. Ins. Co. 90 Wis. 138, 62 N. W. 938; Dugal v. Chippewa Falls, 101 Wis. 533, 77 N. W. 878.

The submission of mere representations of opinion is immaterial and improper. Deming v. Darling, 148 Mass. 504, 2 L.R.A. 743, 20 N. E. 107; Sawyer v. Prickett, 19 Wall. 146, 22 L. ed. 105; Mooney v.

Miller, 102 Mass. 217; Manning v. Albee, 11 Allen, 520; Wise v. Fuller, 29 N. J. Eq. 257; Wilkinson v. Clauson, 29 Minn. 91, 12 N. W. 147; Ellis v. Andrews, 56 N. Y. 83, 15 Am. Rep. 379; James Music Co. v. Bridge, 134 Wis. 510, 114 N. W. 1108; Gordon v. Butler, 105 U. S. 553, 26 L. ed. 1166; Homer v. Perkins, 124 Mass. 431, 26 Am. Rep. 677; Kimball v. Bangs, 144 Mass. 321, 11 N. E. 113; Baldwin v. Moser, — Iowa, —, 123 N. W. 989; Western Townsite Co. v. Novotny, 32 S. D. 565, 143 N. W. 895.

"An action for false and fraudulent representations can never be maintained upon a promise or a prophecy." Union P. R. Co. v. Barnes, 12 C. C. A. 48, 27 U. S. App. 421, 64 Fed. 80.

Nor a mere expression of opinion, though it be false. Johansson v. Stephanson, 154 U. S. 625, 23 L. ed. 1009, 14 Sup. Ct. Rep. 1180; Belcher v. Costello, 122 Mass. 189; Warner v. Benjamin, 89 Wis. 290, 62 N. W. 179; Kimber v. Young, 70 C. C. A. 178, 137 Fed. 744; Heyrock v. Surerus, 9 N. D. 28, 81 N. W. 36; Hartsville University v. Hamilton, 34 Ind. 506; J. H. Clark Co. v. Rice, 127 Wis. 451, 106 N. W. 231, 7 Ann. Cas. 505; Welshbillig v. Dienhart, 65 Ind. 94; State Bank v. Gates, 114 Iowa, 323, 86 N. W. 311; Hubbard v. Long, 105 Mich. 442, 63 N. W. 644; Milwaukee Brick & Cement Co. v. Schoknecht, 108 Wis. 457, 84 N. W. 838; Sheldon v. Davidson, 85 Wis. 138, 55 N. W. 161; First Nat. Bank v. Swan, 3 Wyo. 356, 23 Pac. 743; Joseph v. Decatur Land Improv. & Furnace Co. 102 Ala. 346, 14 So. 739; Knowlton v. Keenan, 146 Mass. 86, 4 Am. St. Rep. 282, 15 N. E. 127; Upton v. Tribilcock, 91 U. S. 45, 23 L. ed. 203; Nelson v. Grondahl, 12 N. D. 130, 96 N. W. 299.

"Positive statements as to value are generally mere expressions of opinion and as such cannot support an action for deceit." Gordon v. Butler, 105 U. S. 553, 26 L. ed. 1166; Blease v. Garlington, 92 U. S. 1, 23 L. ed. 521; Heald v. Yumisko, 7 N. D. 423, 75 N. W. 806; Morgan v. Hodge, 145 Wis. 143, 129 N. W. 1083.

In order to rescind a contract for fraud, the proof must be clear, satisfactory, and convincing. Wadge v. Kittleson, 12 N. D. 452, 97 N. W. 856, and cases cited.

In an action for deceit, the plaintiff must not only prove that the representations were false, but also that the defendant knew they were false. Hindman v. First Nat. Bank, 57 L.R.A. 108, 50 C. C. A. 623, 112 Fed. 931; Kimber v. Young, 70 C. C. A. 178, 137 Fed. 748.

Fraud will never be presumed. Heyrock v. Surerus, 9 N. D. 28, 81 N. W. 36; Klipstein v. Raschein, 117 Wis. 248, 94 N. W. 63.

That plaintiff relied upon the false representations is an essential element in a cause of action for deceit. Such element must be alleged and proved, and the burden is upon the plaintiff. It is not for the defendant to prove the negative of this. Taylor v. Guest, 58 N. Y. 262; Holt v. Sims, 94 Minn. 157, 102 N. W. 386; Anderson v. McPike, 86 Mo. 293; McCready v. Phillips, 44 Neb. 790, 63 N. W. 7; Ackman v. Jaster, 179 Pa. 463, 36 Atl. 324; Provident Loan Trust Co. v. McIntosh, 68 Kan. 452, 75 Pac. 498, 1 Ann. Cas. 906; White v. Smith, 39 Kan. 752, 18 Pac. 931; Curtis v. Hoxie, 88 Wis. 41, 59 N. W. 581; Montgomery v. Fritz, 7 N. D. 348, 75 N. W. 266; Nelson v. Grondahl, 12 N. D. 130, 96 N. W. 299; Bartlett v. Blaine, 83 Ill. 25, 25 Am. Rep. 346; First Nat. Bank v. Maxfield, 83 Me. 576, 22 Atl. 479; Cole v. Miller, 60 Ind. 463; Holton v. Noble, 83 Cal. 7, 23 Pac. 58; 2 Jones, Ev. § 192, and cases.

By the practice adopted in the case and by the charge of the court, appellant was, in effect, deprived of his statutory right to a finding by the jury of the facts, without passion or prejudice. Ward v. Chicago, M. & St. P. R. Co. 102 Wis. 215, 78 N. W. 442; Schrunk v. St. Joseph, 120 Wis. 223, 97 N. W. 946, 15 Am. Neg. Cas. 468.

When a special verdict is taken, general instructions on any subject involved should not be given. Mauch v. Hartford, 112 Wis. 40, 87 N. W. 816, 11 Am. Neg. Rep. 63; Kohler v. West Side R. Co. 99 Wis. 33, 74 N. W. 568; Louisville, N. A. & C. R. Co. v. Hart, 119 Ind. 273, 4 L.R.A. 549, 21 N. E. 753; Morrison v. Lee, 13 N. D. 592, 102 N. W. 223; Patnode v. Westenhaver, 114 Wis. 460, 90 N. W. 467.

The special verdict should be so framed and the charge so given, that both will cover the issues for which claim is made by both parties, and *not* upon the sole theory of one party. Southern Development Co. v. Silva, 125 U. S. 257, 31 L. ed. 682, 8 Sup. Ct. Rep. 881, 15 Mor. Min. Rep. 435; Farrar v. Churchill, 135 U. S. 618, 34 L. ed. 250, 10 Sup. Ct. Rep. 771; Colton v. Stanford, 82 Cal. 351, 16 Am. St. Rep. 137, 23 Pac. 26; Farnsworth v. Duffner, 142 U. S. 43, 35 L. ed. 931, 12 Sup. Ct. Rep. 164; Curran v. Smith, 81 C. C. A. 537, 149 Fed. 951; Pittsburg Life & T. Co. v. Northern Cent. L. Ins. Co. 140 Fed. 888.

Proof that the complaining party inquired of others as to the subject-matter and value should be admitted as negativing the claim that he relied upon the representations. Anderson v. McPike, 86 Mo. 293; Wakeman v. Dalley, 51 N. Y. 27, 10 Am. Rep. 551; Farrar v. Churchill, 135 U. S. 609, 34 L. ed. 246, 10 Sup. Ct. Rep. 771; Fauntleroy v. Wilcox, 80 Ill. 477; Craig v. Hamilton, 118 Ind. 565, 21 N. E. 315.

Evidence of character should be founded on reputation previously existing, and a stranger sent to the neighborhood of a witness to learn his character will not be permitted to testify as to the result of his inquiries. Reid v. Reid, 17 N. J. Eq. 101; 1 Greenl. Ev. § 461; Douglass v. Tousey, 2 Wend. 352, 20 Am. Dec. 616.

A witness cannot testify as to outside statements made to him by others. It is hearsay and highly prejudicial in this case. 16 Cyc. 1195, 1196; Thomas v. Placerville, Gold Quartz Min. Co. 65 Cal. 600, 4 Pac. 641; See Russell v. Brosseau, 65 Cal. 605, 4 Pac. 644; Bailey v. Kreutzmann, 141 Cal. 519, 75 Pac. 104; Ellis v. Whitehead, 95 Mich. 105, 54 N. W. 752; Wigmore, Ev. §§ 1918–1924; Cook v. United States, 138 U. S. 157, 185, 34 L. ed. 906, 914, 11 Sup. Ct. Rep. 268.

Evidence which the jury are not at liberty to believe should not be submitted to them. Robb v. Hackley, 23 Wend. 52; Johnston v. Spoonheim, 19 N. D. 191, 41 L.R.A.(N.S.) 1, 123 N. W. 830; 16 Cyc. 1202–1204; Wigmore, Ev. §§ 1765 and 1788; Jones, Ev. §§ 235a, 236 and 237; Rice, Ev. 1892 ed. p. 434; Citizens' State Bank v. Christianson, 30 N. D. 182, 152 N. W. 346.

The testimony of witnesses should be confined within the limits and issues of the pleadings. Jones, Ev. §§ 139, 140; Bailey v. Walton, 24 S. D. 119, 123 N. W. 701; Galveston, H. & S. A. R. Co. v. Smith, — Tex. Civ. App. —, 24 S. W. 668; Broomfield v. State, — Tex. Crim. Rep. —, 74 S. W. 915.

*Watson & Young, E. T. Conmy,* and *Horace C. Young,* for respondent.

The presumption on appeal is that the rulings of the trial court were correct, and the burden is upon him who challenges them, to show their incorrectness. Garr, S. & Co. v. Spaulding, 2 N. D. 414, 51 N. W. 867; Gould v. Duluth & D. Elevator Co. 3 N. D. 104, 54 N. W. 316; State

v. Campbell, 7 N. D. 58, 72 N. W. 935; Myers v. Mitchell, 1 S. D. 249, 46 N. W. 245.

"One who wilfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damages which he thereby suffers." Comp. Laws 1913, § 5943. "For every wrong there is a remedy." Comp. Laws 1913, § 7257.

Errors of which complaint is made, must be specifically assigned: The evidence erroneously admitted must be pointed out. Franz Falk Brewing Co. v. Mielenz Bros. 5 Dak. 142, 37 N. W. 728; McCormack v. Phillips, 4 Dak. 506, 34 N. W. 39; Caulfield v. Bogle, 2 Dak. 464, 11 N. W. 511; Bush v. Northern P. R. Co. 3 Dak. 445, 22 N. W. 508; Hudlum v. Holy Terror Min. Co. 16 S. D. 261, 92 N. W. 31; Bettys v. Denver Twp. 115 Mich. 228, 73 N. W. 138; Bryson v. Boyce, 41 Tex. Civ. App. 415, 92 S. W. 820; Sanders v. Central of Georgia R. Co. 123 Ga. 763, 51 S. E. 728; Leverett v. Bullard, 121 Ga. 536, 49 S. E. 591; Sheridan v. Gray's Ferry Abattoir Co. 214 Pa. 115, 63 Atl. 418; Lane v. Williams, 118 Ga. 167, 44 S. E. 993; Reinhart v. Blackshear, 105 Ga. 799, 31 S. E. 748.

Unless so clearly stated, assignments of errors will not be considered. Western U. Teleg. Co. v. Michelson, 94 Ga. 436, 5 Inters. Com. Rep. 236, 21 S. E. 169; Pearson v. Brown, 105 Ga. 802, 31 S. E. 746; Georgia R. & Bkg. Co. v. Hurt, 112 Ga. 817, 38 S. E. 40; Reilly v. Atchison, 4 Ariz. 72, 32 Pac. 262; Feister v. Kent, 92 Iowa, 1, 60 N. W. 493; Fagerberg v. Johnson, 48 Kan. 434, 29 Pac. 684; Cheatham v. Pearce, 89 Tenn. 668, 15 S. W. 1080; Powers v. McKenzie, 90 Tenn. 167, 16 S. W. 559; Pearson v. Flanagan, 52 Tex. 266; Gallagher v. Goldfrank, 75 Tex. 562, 12 S. W. 964; Parker County v. Jackson, 5 Tex. Civ. App. 36, 23 S. W. 924; Galveston, H. & S. A. R. Co. v. Bowman, — Tex. Civ. App. —, 25 S. W. 140; Johnson v. White, — Tex. Civ. App. —, 27 S. W. 174; Kempner v. Ivory, — Tex. Civ. App. —, 29 S. W. 538; Salvador v. Feeley, 105 Iowa, 478, 75 N. W. 476; Reinhart v. Blackshear, 105 Ga. 799, 31 S. E. 748; Lane v. Williams, 118 Ga. 167, 44 S. E. 993; Sanders v. Central of Georgia R. Co. 123 Ga. 763, 51 S. E. 728; Altgelt v. Elmendorf, — Tex. Civ. App. —, 86 S. W. 41.

"A case will not be reversed on account of errors in rulings on evidence unless such errors are particularly specified." Clifford v. L. Wolff

Mfg. Co. 8 Colo. App. 334, 46 Pac. 214; Skinner v. Mitchell, 5 Kan. App. 366, 48 Pac. 450; Graham v. Frazier, 49 Neb. 90, 68 N. W. 367; Woodbridge Bros. v. DeWitt, 51 Neb. 98, 90 N. W. 506; Parkins v. Missouri P. R. Co. 4 Neb. (Unof.) 1, 93 N. W. 197; Louisville & N. R. Co. v. Morgan, 114 Ala. 449, 22 So. 20, 2 Am. Neg. Rep. 294; Las Animas County v. Stone, 11 Colo. App. 476, 53 Pac. 616; Quaker City Nat. Bank v. Hepworth, 21 Pa. Super. Ct. 566.

"An assignment of error to evidence, which does not set out the testimony admitted, is insufficient." Burt v. Florida Southern R. Co. 43 Fla. 339, 31 So. 265; Reinhart v. Blackshear, 105 Ga. 799, 31 S. E. 748; Willingham v. Sterling Cycle Works, 113 Ga. 953, 39 S. E. 314; Acklin v. McCalmont Oil Co. 201 Pa. 257, 50 Atl. 955; Bachert v. Lehigh Coal & Nav. Co. 208 Pa. 362, 57 Atl. 765; DeRoy v. Richards, 8 Pa. Super. Ct. 119; H. B. Claflin Co. v. Querns, 15 Pa. Super. Ct. 464; Pizzi v. Nardello, 23 Pa. Super. Ct. 535; Perry v. Lynch, 10 Colo. App. 549, 52 Pac. 219; Parsons v. Parsons, 17 Colo. App. 154, 67 Pac. 345; Rudolph v. Smith, 18 Colo. App. 496, 72 Pac. 817; Morris v. Levering, 98 Ga. 33, 25 S. E. 905; McCullough v. Seitz, 28 Pa. Super. Ct. 458; Brady v. Georgia Home Ins. Co. 24 Tex. Civ. App. 464, 59 S. W. 914; Cases cited in 3 Century Dig. § 29997, "Appeal & Error."

Novation belongs to the law of contracts, and not to the law of torts. We are seeking redress for a wrong—a deception—a fraud. We are not suing upon contract. True, a contract was made, but an essential element therein, namely, "consent," was obtained by fraud, and therefore not real. Comp. Laws 1913, § 5837; Jones, Ev. §§ 431, 435; 1 Rice, Ev. pp. 393, 394; 2 Rice, Ev. p. 953; Zerbe v. Miller, 16 Pa. 488; Hopkins v. Sievert, 58 Mo. 201; Stauffer v. Young, 39 Pa. 455; Smalley v. Hale, 37 Mo. 102; 2 Parsons, Contr. 6th ed. 786; Best, Ev. 230, 235, 236; Cushing v. Rice, 46 Me. 303, 71 Am. Dec. 579; Thompson v. Bell, 37 Ala. 438; Selden v. Myers, 20 How. 506, 15 L. ed. 976; Lull v. Cass, 43 N. H. 62; Montgomery v. Pickering, 116 Mass. 227; Meyer v. Huneke, 55 N. Y. 412; Wharton v. Douglass, 76 Pa. 273; Burtner v. Keran, 24 Gratt. 42; Gage v. Lewis, 68 Ill. 604; Hines v. Driver, 72 Ind. 125; McLean v. Clark, 47 Ga. 24; Turner v. Turner, 44 Mo. 535; Thomas v. Kennedy, 24 La. Ann. 209; Grider v. Clopton, 27 Ark. 244; Cook v. Moore, 39 Tex. 255; Fuller v. Lamar, 53 Iowa,

477, 5 N. W. 606; Wade v. Saunders, 70 N. C. 270; Abbott, Trial Ev. pp. 614, 615; Wood, Pr. Ev. 63; Cozzins v. Whitaker, 3 Stew. & P. (Ala.) 329; Beecker v. Vrooman, 13 Johns. 302; Johnson v. Miln, 14 Wend. 195; Tayloe v. Riggs, 1 Pet. 591, 7 L. ed. 275; Mumford v. M'Pherson, 1 Johns. 414, 3 Am. Dec. 339.

Subsequent conduct is admissible to show fraudulent intent. 2 Thomp. Trials, §§ 1977, 1978; Kephart v. Continental Casualty Co. 17 N. D. 380, 116 N. W. 349; 1 Hayne, New Tr. & App. § 1149; Spencer v. Long, 39 Cal. 700; Ackley v. Fishbeck, 124 Cal. 409, 57 Pac. 207.

Even though an issue be raised by the evidence, it should not be submitted as such to the jury unless raised by and supported in the pleadings. Miller v. Layne & B. Co. — Tex. Civ. App. —, 151 S. W. 341; 6 Century Dig. "Trial," § 832, and cases cited.

An appellant, to have the action of the trial judge reviewed, must bring into the record and before the appellate court the same record that was presented to the trial court; otherwise alleged errors are not reviewable. Schomberg v. Long, 15 N. D. 506, 108 N. W. 332; State v. Gerhart, 13 N. D. 663, 102 N. W. 880; State v. Scholfield, 13 N. D. 664, 102 N. W. 878; Aultman v. Jones, 15 N. D. 130, 106 N. W. 688; Fisher v. Betts, 12 N. D. 197, 96 N. W. 132; Sockman v. Keim, 19 N. D. 317, 124 N. W. 64; Lockensmith v. Winton, 11 Ala. App. 670, 66 So. 954; American Nat. Bank v. Hammond, 25 Colo. 367, 55 Pac. 1090; Andrews v. Jackson, 168 Mass. 266, 37 L.R.A. 402, 60 Am. St. Rep. 390, 47 N. E. 412; Smith v. Anderson, 74 Or. 1158, 144 Pac. 1158; Collins v. Jackson, 54 Mich. 186, 19 N. W. 947; Stubbs v. Johnson, 127 Mass. 219; Tillis v. Smith Sons Lumber Co. 188 Ala. 122, 65 So. 1015; New v. Jackson, 50 Ind. App. 120, 95 N. E. 328; Moon v. McKinstry, 107 Mich. 668, 65 N. W. 546; Simar v. Canaday, 53 N. Y. 298, 13 Am. Rep. 523; Warner v. Benjamin, 89 Wis. 290, 62 N. W. 179; Hetland v. Bilstad, 140 Iowa, 411, 118 N. W. 422; Whitehurst v. Life Ins. Co. 149 N. C. 273, 62 S. E. 1067.

Representations as to the value of property very often are those of fact, and, when false, are actionable. Their materiality is for the jury. Mattauch v. Walsh Bros. 136 Iowa, 225, 113 N. W. 818; Hetland v. Bilstad, 140 Iowa, 411, 118 N. W. 422; Fottler v. Moseley, 179 Mass. 295, 60 N. E. 788; Kehl v. Abram, 210 Ill. 218, 102 Am. St. Rep. 158, 71 N. E. 347.

Evidence that satisfied the common mind of fraud is sufficient. The court so charged the jury. 1 Brickwood's Sackett, Instructions to Juries, § 1054; Jones, Ev. 2d ed. § 192; 1 Moore, Facts, § 50, and cases cited; Fargo Gas & Coke Co. v. Fargo Gas & Electric Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066; 16 Cyc. 927.

The burden of proof and knowledge of the facts giving rise to the right to rescind and of the time of acquiring such knowledge, rests on the defendant. Sprague v. Taylor, 58 Conn. 542, 20 Atl. 612; Kerr, Fr. & Mistake, 75; Nicol's Case, 3 De G. & J. 439, 28 L. J. Ch. N. S. 257, 5 Jur. N. S. 205, 7 Week. Rep. 217; Liland v. Tweto, 19 N. D. 551, 125 N. W. 1032; 24 Am. & Eng. Enc. Law, 626; Hiner v. Richter, 51 Ill. 299.

Counsel have the right to argue to the jury the questions which concern the case. The fact that a special verdict is demanded does not change or abridge the rule. The right of argument is one of the essentials of "due process." 1 Thomp. Trials, § 920.

The subject of investigation and reliance was fully and properly submitted to the jury. Barron v. Myers, 146 Mich. 510, 109 N. W. 862, and cases cited.

Objections to questions must be specific. Hayne, New Tr. & App. rev. ed. § 105.

In actions for deceit, it is not necessary to prove each false or fraudulent representation. The finding of a single false representation inducing a sale is sufficient. Long v. Davis, 136 Iowa, 734, 114 N. W. 197; Scholfield Gear. & Pulley Co. v. Scholfield, 71 Conn. 1, 40 Atl. 1046; Kehl v. Abram, 210 Ill. 218, 102 Am. St. Rep. 158, 71 N. E. 347; Somers v. Richards, 46 Vt. 170.

Questions as to the materiality or relevancy of testimony are largely, if not wholly, discretionary with the trial judge, and his rulings will not be interfered with in the absence of manifest abuse. Moody v. Pierano, 4 Cal. App. 411, 88 Pac. 380; Humphrey v. Monida & Y. Stage Co. 131 Minn. 18, 131 N. W. 498; Chesterfield Mfg. Co. v. Leota Cotton Mills, 114 C. C. A. 318, 194 Fed. 358; McDonald v. Smith, 139 Mich. 211, 102 N. W. 668.

The charge of the trial court must be considered as a whole,—not by excerpts. Stoll v. Davis, 26 N. D. 379, 144 N. W. 443; First Nat. Bank v. Minneapolis & N. Elevator Co. 11 N. D. 280, 91 N. W. 436;

Buchanan v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335; National Bank v. Lemke, 3 N. D. 154, 54 N. W. 919; Gagnier v. Fargo, 12 N. D. 224, 96 N. W. 841.

A judgment will not be reversed because of an erroneous instruction, when it affirmatively appears from answers to interrogatories, that such instruction did not influence the jury in reaching its verdict. Acton v. Fargo & M. Street R. Co. 20 N. D. 458, 129 N. W. 225; McDonald v. Smith, 139 Mich. 211, 102 N. W. 668; Hutchinson Furnace & Smoke Consuming Co. v. Lyford, 123 Ill. 300, 13 N. E. 844; Eames v. Morgan, 37 Ill. 260.

The rule of *caveat emptor* does not apply under the facts here. "Where parties deal at arms' length the doctrine applies; but the moment the vendor makes a false statement of fact, and its falsity is not palpable to the purchaser, he has an undoubted right implicitly to rely upon it." Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 223, 37 L.R.A. 593, 59 N. W. 1066.

Many material facts, not known to or ascertainable by plaintiff, were purposely withheld by defendant, who possessed full knowledge of them. Liland v. Tweto, 19 N. D. 551, 125 N. W. 1032; Graham v. Moffett, 119 Mich. 303, 75 Am. St. Rep. 393, 78 N. W. 132; Barron v. Myers, 146 Mich. 510, 109 N. W. 862; Miller v. Curtiss, 27 Jones & S. 127, 13 N. Y. Supp. 604; Webber v. Jackson, 79 Mich. 175, 19 Am. St. Rep. 165, 44 N. W. 591; Berge v. Eager, 85 Neb. 425, 123 N. W. 454; Smith v. Werkheiser, 152 Mich. 177, 15 L.R.A.(N.S.) 1092, 125 Am. St. Rep. 406, 115 N. W. 964; Harvey v. Smith, 17 Ind. 272.

Where evidence is circumstantial in its nature and offered to prove motive or intent, considerable latitude must be allowed. Jones, Ev. § 142; Coggey v. Bird, 126 C. C. A. 527, 209 Fed. 803; Mudsill Min. Co. v. Watrous, 9 C. C. A. 415, 22 U. S. App. 12, 61 Fed. 163, 18 Mor. Min. Rep. 1; Butler v. Watkins, 13 Wall. 456, 457, 20 L. ed. 629; Swinney v. Patterson, 25 Nev. 411, 62 Pac. 1; Bancroft v. Heringhi, 54 Cal. 120; Porter v. Stone, 62 Iowa, 442, 17 N. W. 654; United States v. Kenney, 90 Fed. 257; Darling v. Klock, 33 App. Div. 270, 53 N. Y. Supp. 593; Piedmont Bank v. Hatcher, 94 Va. 229, 26 S. E. 505.

Where part of correspondence by letters is offered and received, other

parts thereof may also be offered. 17 Cyc. 365, 408, "evidence;" Anderson v. First Nat. Bank, 4 N. D. 182, 59 N. W. 1029; Thayer v. Hoffman, 53 Kan. 723, 37 Pac. 125; Harris v. Pryor, 44 N. Y. S. R. 495, 18 N. Y. Supp. 128; Stringer v. Breen, 7 Ind. App. 557, 34 N. E. 1015; Pinkham v. Cockell, 77 Mich. 265, 43 N. E. 921.

It is not the province of a complaint to allege a rule of damages. Its business is to state the facts. St. Louis Trust Co. v. Bambrick, 149 Mo. 560, 51 S. W. 706; San Antonio v. Pizzini, — Tex. Civ. App. —, 58 S. W. 635.

CHRISTIANSON, J. This is an action to recover damages for the fraud and deceit of the defendant, whereby it is alleged that plaintiff was induced to purchase from the defendant an interest in a certain newspaper plant located in the city of Fargo in this state, known as the "Courier-News." Upon demand of defendant's counsel, the case was submitted to the jury for a special verdict. Judgment was ordered and entered against defendant upon such special verdict, and this appeal is from the judgment so entered.

The complaint at length and with great particularity sets forth the facts upon which plaintiff relies for a recovery, and charges "that the defendant, More, for the purpose of inducing the plaintiff to purchase an interest in said newspaper plant, and to pay over to him the cash or securities hereinbefore referred to, or pay to him their equivalent in money, to wit, the sum of twenty-thousand dollars ($20,000), and to induce plaintiff to resign his pastorate and sever his connection with his church and to remove his family from Toledo, Ohio, and establish himself in the city of Fargo permanently, and to induce the plaintiff to take upon himself the editorial management and the operation of said newspaper plant during the months of July, August, and September, 1913, falsely and fraudulently represented and stated to the plaintiff: (1) That the Courier-News was the leading newspaper in the state; (2) that the people of the state in their politics were almost solidly Progressive; (3) that the new Progressive party in its membership stood second in the state and ran second in the 1912 elections; (4) that the new Progressive party was organized, and was solidly behind the paper, and would get behind the plaintiff, and would give him united support; (5) that the paper was popular throughout the state; (6) was in good

repute and was of wide influence; (7) that it paid its bills and had a good financial standing; (8) that it was sound financially and was upon a paying basis, and was returning a profit month by month; (9) that it had a subscription list of at least 10,000; (10) that the newspaper and plant, including franchise, subscription lists, and accounts, were of the value of seventy-three thousand dollars ($73,000), to wit:

| | |
|---|---:|
| For the press, linotypes, type, stereotyping outfit, and entire mechanical equipment | $30,000 |
| For the office equipment, furniture, etc., used in business and editorial departments | 3,000 |
| For Associated Press franchise | 15,000 |
| For subscription list | 10,000 |
| Uncollected accounts | 15,000 |
| | $73,000 |

The complaint also alleges a large number of fraudulent conceal-ments, among others that the Courier-News, instead of being the lead-ing newspaper in the state, was in fact in general disrepute as a news-paper, and had been for a number of years past, and was generally a discredited organ; that it had an unbroken record for financial bad faith with those who had interested themselves in it; that under its owner-ship just prior to that of the defendant, two persons active in its manage-ment were indicted by the Federal grand jury for fraudulent use of the mails in conducting a voting contest; that a large number of re-spectable citizens had at various times invested money in it to help sustain it, and that without exception these men had been the losers; that during its entire history and up to the time of the negotiations between the plaintiff and the defendant it had never returned a profit, and was a constantly losing venture during the ownership of the defend-ant, More.

The complaint further alleges that plaintiff relied upon said repre-sentations, and, because of such representations and concealments, was induced to pay over to defendant $20,000, resign his position as pastor, come to Fargo, and join with the defendant and his bookkeeper in organizing the Courier-News Corporation; and that the only thing he has received for his money is a stock certificate in said corporation of

the face value of $26,000, which it is alleged is worthless. And that by reason of such false representations and concealments, plaintiff has been damaged in the sum of $35,000. The answer, aside from certain admissions and explanations with reference to the fraudulent concealments charged, is a general denial.

The evidence shows that the plaintiff, at the time of the commencement of the transaction in question, was, and for twenty-five years prior thereto had been, a Methodist minister. Before entering the ministry he was a printer or newspaper man. During July, 1913, through a mutual acquaintance of plaintiff and defendant, plaintiff's attention was called to the fact that the defendant, More, owned and desired to sell the Courier-News. Negotiations were opened between plaintiff and defendant with the result that on August 4, 1913, they executed a written agreement as follows:

Memorandum of Agreement, made this 4th day of August, A. D., 1913, by and between A. Y. More, of Fargo, North Dakota, party of the first part, and Lewis T. Guild, of Toledo, Ohio, party of the second part.

Witnesseth:—That for and in consideration of the sum of forty-five thousand dollars ($45,000), to be paid by the party of the second part, to the party of the first part as hereinafter provided, said party of the first part hereby agrees to sell and does hereby sell to the party of the second part, the following described property, to wit:

The newspaper and printing business known as the Fargo Courier-News, etc. . . .

The sum of forty-five thousand dollars ($45,000) is to be paid as follows:

Five hundred ($500) in cash at the execution of this contract, which, in case the contract is canceled, is to be returned to Lewis T. Guild. . . . [Here follow provisions for the remainder of the payments].

It is mutually agreed by and between the parties hereto, that this contract, together with the notes for $25,000 and the chattel mortgage securing same, shall be left with the Northern Savings Bank, with an agreement that upon the party of the second part delivering to the party of the first part the $20,000 payment, and the said A. Y. More putting in the savings bank for the use and benefit of the said second party a

bill of sale conveying all of the above-described property, then, and in that event, one copy of this contract shall be delivered to each of the parties hereto, and the said notes for $25,000 and mortgage securing same shall be delivered to the party of the first part.

It is further agreed that said exchange shall be made on or before the 11th day of August, 1913. . . .

[Here follow provisions relative to the organizing of a corporation and the distribution of its stock, and an agreement that the defendant shall continue to operate the paper until September 1st, and also an agreement on his part to accept the obligations of corporation on the same terms as the notes of the plaintiff theretofore described.] . . .

This contract, together with a bill of sale of the newspaper plant from More to Guild, and three promissory notes and chattel mortgage on the same property from Guild to More, together with a letter of instructions signed by Guild and More, was delivered to Attorney Turner with instructions to deposit the same with the Northern Savings Bank of Fargo, to be held in escrow.

On August 5, 1913, an agreement was signed by More providing for certain changes in the contract. On August 11, 1913, a modification or extension of the contract was prepared and signed by the plaintiff, which provided for certain changes in the payments, and also provided that the time for the exchange of the bill of sale for the notes and chattel mortgage, and the delivery thereof to the plaintiff and defendant respectively, should be extended to September 15, 1913. This modification, together with a check for $5,000, was mailed by Guild to the Northern Savings Bank (the depository); and on August 16, 1913, that agreement was signed by More. The correspondence between the parties shows that Guild at one time, on account of the sickness of his wife and the difficulty which he experienced in closing his affairs at Toledo, suggested a cancelation of the contract, which, however, More would not permit.

The matter of the organization of the corporation was left in the hands of Attorney Turner, and a charter was obtained from the secretary of state on August 25, 1913. Thereafter on August 27, 1913, the plaintiff, Guild, arrived in North Dakota, and on the same day the first meeting of the incorporators was held and the organization perfected;

More subscribing for 358 shares in the proposed croporation, the plaintiff, Guild, for one share, and Williams (More's bookkeeper), the third incorporator, for one share. Some objection was raised to the regularity of the proceedings by an attorney who examined the same for the purpose of passing on the validity of the notes and chattel mortgage to be executed by the corporation to More. The plaintiff and defendant thereupon consulted Attorney Holt, of Fargo, with the result that another meeting of the stockholders of the corporation was held on August 29, 1913, and certain resolutions were passed canceling all proceedings had at the meeting of the stockholders held on August 27, 1913.

For certain reasons, it was agreed that the property should be sold to the corporation for the sum of $52,250. More, also, agreed to loan the corporation $3,000, to be used as a working capital. These matters were acted on by the directors of the corporation at the meeting held on August 29, 1913, and resolutions duly adopted authorizing the corporation to purchase from More the Courier-News newspaper plant for the sum of $52,250 for the following consideration: 360 shares of the capital stock of said corporation to be issued as follows: 358 shares to More; 1 share to Guild, and 1 share to Williams; the corporation to execute and deliver to More its promissory notes aggregating $19,250, secured by chattel mortgage on all its property, for the $16,250 balance of the purchase price, and the $3,000 loaned by More to the corporation. The certificates of stock were issued forthwith, and the notes and chattel mortgage were executed and delivered to More, and on that same day a bill of sale for the newspaper plant to the corporation was also executed. The chattel mortgage and bill of sale were filed for record shortly after their execution. On August 30, 1913, the plaintiff executed and delivered to the defendant, More, two checks aggregating $14,500; which defendant thereafter cashed. And on the same day, More assigned and delivered to Guild 258 shares of the capital stock of the corporation, and Williams (More's bookkeeper), shortly thereafter assigned his one share of stock to Guild, and also tendered his resignation as an officer of the corporation.

The agreement, as consummated between Guild and More, was that Guild, in consideration of the $20,000 paid to More, received 260 shares of the capital stock, and More received the $20,000 paid by

32 N. D.—29.

Guild, 100 shares of capital stock in the corporation, and the notes of the corporation for $16,250. The result of the transaction as consummated was that the Courier-News Corporation, became the owner of the newspaper plant formerly owned by More, subject to a first mortgage to More for $19,250, securing part of the purchase price and the $3,000 loan made by More to the corporation. There were issued in all 360 shares of the corporate stock of this corporation, of which More held 100 shares, and Guild 260 shares, for which Guild had paid in all $20,000 in the following manner: $500 on August 4, 1913; $5,000 about August 11, 1913, and $14,500 on August 30, 1913. The plaintiff took possession of the newspaper property on September 1, 1913, later returned to Ohio and removed his family to Fargo. Guild had no knowledge of the fraud practised upon him until after his return from Ohio. But after being in possession of the property he discovered certain things which led him to believe that misrepresentations had been made to him, and he reported these matters to the defendant from time to time. Receiving no satisfactory explanation or adjustment, he, on October 7 and 9, 1913, respectively, wrote letters or notices to More, stating that on account of the misrepresentations he (plaintiff) repudiated the contract, and tendered a return of the stock certificates, and demanded from defendant a return of the $20,000 which plaintiff had paid. This demand was ignored by defendant, and plaintiff thereafter brought this action.

We have not set out the evidence with reference to the false representations, and fraudulent concealments, as it is unnecessary to a consideration of the questions raised. It is sufficient to say that the evidence showed that such misrepresentations and concealments were made from the commencement of the negotiations in the latter part of July, 1913, until the consummation of the transaction on August 30, 1913. The jury, in their answers to the special findings, found that: (1) The representations and suppressions were made as alleged. (2) That they were material. (3) That they were false. (4) That they were wilfully made, with intent to deceive the plaintiff, and to induce him to resign his position, come to Fargo, take up the management of the Courier-News, and buy an interest in it. (5) That plaintiff relied in and upon such representations in purchasing from the defendant an interest in the Courier-News. (6) That each of the various suppres-

sions of fact constituted one of the inducements which led plaintiff to purchase an interest in the Courier-News. The findings of the jury are amply sustained by the evidence.

After the jury had been impaneled and sworn to try the case, defendant's counsel objected to the introduction of evidence, and moved for a dismissal of the action "upon the ground and for the reason that the complaint does not state facts sufficient to constitute a cause of action; particularly in this that it does not allege facts from which damages can be measured or determined, and does not allege the value of the property sold and delivered by the defendant to the plaintiff, nor the value such property would have had if it had been as represented by the defendant."

1. It is too well settled to require the citation of authority that an objection to the admission of evidence at the trial, on the ground that the facts stated in the complaint are not sufficient to constitute a cause of action, is not favored by the courts. The presumption is in favor of the pleading so attacked, and if it states facts showing that the plaintiff is entitled to recover, though the same may be informally stated, it will be sustained.

2. The complaint in the case at bar, however, was clearly sufficient. It set forth with a great deal of particularity the facts constituting plaintiff's cause of action, and alleged, and prayed for, damages in the sum of $35,000. The objection was based upon the theory that the complaint must state the measure of damages. We are not aware of any such rule of pleading. The damages asked by plaintiff were general damages, i. e., such damages as the law holds to be the necessary result of the cause of action set forth in the complaint. In such cases the measure of damages is purely a question of law. Sedgw. Damages, 9th ed. § 606. And this court has repeatedly considered and determined the same as a legal question. Fargo Gas & Coke Co. v. Fargo Gas & Electric Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066.; Beare v. Wright, 14 N. D. 31, 69 L.R.A. 409, 103 N. W. 632, 8 Ann. Cas. 1057. Hence, an allegation stating the measure of damages is not essential, as this would be merely a statement of a legal conclusion. St. Louis Trust Co. v. Bambrick, 149 Mo. 560, 51 S. W. 706; San Antonio v. Pizzini, — Tex. Civ. App. —, 58 S. W. 635. See also 31 Cyc. 49; 12 Enc. Pl. & Pr. 1024.

The proposition on which appellant apparently places his greatest reliance is that plaintiff, by bringing this action for deceit, affirmed the contract entered into August 4, 1913, and that therefore the only representations which would be material are those made prior to August 4, 1913, and that therefore it was error to admit evidence showing representations made by defendant to plaintiff between August 4, 1913, and August 29, 1913. Appellant's counsel states the proposition in their brief as follows:

"Exhibit 17 was the contract which Guild was fraudulently induced to enter into (assuming fraudulent representations or concealments as we are bound to do). The only fraudulent representations and conceal- ments which are material are those made prior to August 4th. They are the only ones which could have induced Guild to make the contract. After he had signed this contract he became obligated by its terms, and legally bound to carry out all his covenants thereunder until he re- pudiated the contract. Even though induced by fraudulent representa- tions the contract was not void, but only voidable. Any fraudulent representations or concealments which may have been made after August 4th were palpably immaterial. They could not have induced Guild to execute Ex. 17. They, of course, may have induced Guild to carry out the contract, but, if so, they only induced him to do what he was already legally bound to do under the terms of his contract. What he did in performance of his contract is, as a matter of law, only attributable to his obligation to perform the contract, and cannot be attributed to any false representations or concealments made after the contract was executed. A party cannot be defrauded in being induced to do what good faith and a proper observance of his promises made it his duty to do."

Plaintiff does not bring a suit on contract, but asks to be compensated for the damages he has sustained on account of the deceit practised upon him by the defendant. The plaintiff in his complaint averred, and by his evidence established, that by reason of, and in reliance upon, certain false representations on the part of defendant, he (plaintiff) paid over to defendant in all $20,000 in cash, in return for which he (plaintiff) re- ceived only 260 shares of stock in a certain corporation.

3. Plaintiff's right of recovery exists not by reason of contract, but

by reason of the obligation imposed by our statute, under our law, "every person is bound without contract to abstain from injuring the person or property of another or infringing upon any of his rights." Comp. Laws, § 5942. And, "one who wilfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers." Comp. Laws 1913, § 5943.

4. Actionable fraud does not necessarily consist of false representations which constituted an inducement to the making or consummation of a contract. But, if the essential elements of actionable fraud are present, a plaintiff can recover such damages as he has sustained through relying on the misrepresentations of a defendant in any transaction, whereby plaintiff has been induced to part with property or surrender some legal right, and thereby suffered loss and injury. As, when such misrepresentation. induced plaintiff, to his loss, to refrain from making sales or entering into contracts (Snow v. Judson, 38 Barb. 210; Butler v. Watkins, 13 Wall. 456, 20 L. ed. 629); or from performing a contract (Benton v. Pratt, 2 Wend. 385, 20 Am. Dec. 623; Rice v. Manley, 66 N. Y. 82, 23 Am. Rep. 30); or from exercising his right to rescind a contract (New York Land Improv. Co. v. Chapman, 118 N. Y. 288, 23 N. E. 187; Bowen v. Carter, 124 Mass. 426); or where plaintiff by false and fraudulent representations, or by fraudulent concealment of facts, is induced to compromise a claim (Wessels v. Carr, 15 App. Div. 360, 44 N. Y. Supp. 114; Howard v. McMillen, 101 Iowa, 453, 70 N. W. 623; Buck v. Leach, 69 Me. 484); or to extend credit, and suffers loss through the insolvency of the person to whom credit is extended (20 Cyc. 68).

Cooley (Cooley, Torts, 3d ed. p. 905) says: "Actual or positive fraud consists in deception practised in order to induce another to part with property or to surrender some legal right, and which accomplishes the end designed."

20 Cyc. 80, states the law to be as follows: "An action of deceit may be maintained upon fraudulent misrepresentations whereby plaintiff has been induced to forbear the enforcement of some legal right and has thereby suffered loss, as well as where he has been induced to do some positive act."

"To maintain an action of deceit it is not necessary that the false representations should have been an inducement to a contract after-

ward consummated; but, if the essential elements of actionable fraud are present, plaintiff can recover damages he has sustained through relying on the misrepresentations of defendant." 20 Cyc. 79.

A cause of action in deceit accrues immediately upon the successful consummation of the fraud, provided the fraud results in injury to the plaintiff. 20 Cyc. 90. He is not required either to complete or perform the contract (20 Cyc. 92), or tender a return of the property received under the contract, but is entitled to retain what he received, and sue for the damages caused by the fraud. 20 Cyc. 91.

5–7. A contract thus entered into is voidable and does not become binding on the defrauded party until his free consent thereto is given. In other words, it does not become a valid contract or binding upon the defrauded party unless, with knowledge of the fraud, he ratifies or affirms it. Sell v. Mississippi River Logging Co. 88 Wis. 581, 60 N. W. 1065, 1067. The law naturally does not protect the wrongdoer, or give him any benefit or advantage by reason of the fraud he has perpetrated. And, therefore, on discovery of the fraud, the defrauded party is given the option of rescinding or affirming the transaction. In case of rescission, he is required to act promptly on discovery of the fraud. In such case, the contract ceases to exist for any purpose, and the parties stand in the same position as though it had never been made, and hence, it is necessary that they be placed in the same position in which they were before the transaction took place. Therefore the party defrauded, in such case, is entitled to recover back whatever consideration he parted with, but he must, also, return or offer to return to the other party whatever he received. In case of affirmance, he retains what he received, and is entitled to be compensated for the damages he sustained by reason of the false representation. That is, the wrongdoer will be compelled to pay damages equal to the difference in value between what he gave and what he represented he would give. Fargo Gas & Coke Co. v. Fargo Gas & Electric Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066; Beare v. Wright, 14 N. D. 31, 69 L.R.A. 409, 103 N. W. 632, 8 Am. Cas. 1057.

The transaction may be affirmed either expressly or by implication. And a person who retains as his own the property which he received in the transaction will necessarily be deemed the owner thereof. And, having elected to assume the position of owner, will be compelled to

abide by the selection made, and to be not only invested with the rights and prerogatives, but also burdened with the duties and liabilities, incident to such ownership. Hence, in such case the measure of damages for the fraud and deceit practised upon him is very properly predicated upon the basis that the defrauded party is the owner of the property, and therefore his damage is equal to the difference in value between the property he received and what he would have received if the representations had been true. Such affirmation, however, does not remove all effect of the fraud, or render the contract in every essential equivalent to a contract originally made in good faith and free from fraud. The party guilty of fraud is not relieved from liability for his wrongful conduct, nor does the injured party waive his claim for damages. 20 Cyc. 87, 90. Neither is the defrauded party bound by the recitals of the contract. The rule that prior negotiations are merged in the written agreement does not apply. But the party defrauded may show by parol that he was induced by false and fraudulent representations to become a party to the contract. Jones, Ev. §§ 431, 435.

It is true, plaintiff affirmed the transaction; but which transaction did he affirm? He had the option of either affirming or rescinding; he elected to affirm. But he must affirm or rescind the entire transaction. He could not affirm in part, and rescind the remainder. The transaction here involved was the sale by More to Guild of an interest in the Courier-News, and the payment therefor by Guild to More of $20,000. The executory contract of August 4, 1913, constituted merely a part of the transaction. This contract was voidable. It was tainted with fraud. No legal duty rested on Guild to comply with its terms. If Guild was induced by false representations to carry out the scheme outlined in such contract, then such latter representations were equally actionable. Plaintiff received no property on August 4th, but merely the promise of defendant to deliver certain property to him at a future time, upon certain conditions. The only thing plaintiff ever received for his money was the stock certificates delivered to him on August 30th. On that day the transaction was terminated, and the purpose sought by the false representations accomplished. On that day, plaintiff received the stock certificates for which he paid his money. It seems obvious that by retaining these certificates he affirmed the transaction by which he became possessor thereof, and not merely the executory negotiations and agreements in the transaction.

It is true that an action for deceit will not lie where a party is merely induced to do that which good conscience and legal duty requires him to do,—such as, to pay a just and legal debt, or comply with the conditions of a valid, legal contract. But that is not the condition here. The contract signed August 4, 1913, was wholly executory. (Comp. Laws § 5921.) It even contemplated a possible cancelation, and provided that, in event of such cancelation, the $500 paid by Guild should be returned to him. Its execution was merely one of the numerous acts in the transaction which was consummated on August 30, 1913, by the delivery to Guild by More of the stock certificates, and the payment by Guild to More of the sum of $14,500. One of the essentials to the existence of a valid contract is the consent of the contracting parties thereto. (Comp. Laws, § 5837.) This consent must be free and mutual. (Comp. Laws, § 5842.) The apparent consent is not real or free when obtained through fraud. (Comp. Laws, § 5844.) Even the executed contract consummated on August 30, 1913, was voidable, and subject to rescission. The free consent of Guild thereto was lacking. It did not become binding upon Guild until he, with knowledge of the fraud, ratified or affirmed it. Sell v. Mississippi River Logging Co. 88 Wis. 581, 60 N. W. 1065, 1067. The trial court properly admitted the evidence in question.

8. The evidence was admissible for another reason. The undisputed evidence shows that the contract signed August 4, 1913, was, together with the other papers accompanying the same, delivered in escrow. By the modification subsequently executed and transmitted to the depository, the date for the delivery of the papers deposited with this contract was extended to September 1, 1913. It is undisputed that the bill of sale from More to Guild, and the promissory notes and chattel mortgage from Guild to More, deposited in escrow with this contract, were never used. But on August 29, 1913, another bill of sale for the newspaper property was executed and delivered to the corporation, and the corporation thereupon executed and delivered its notes and chattel mortgage to More. This entire deal was fully consummated on August 30, 1913, by the delivery to the respective parties of the various papers, and the payment by Guild to More of the sum of $14,500, the balance of the $20,000. It appears, therefore, that the contract signed August 4, 1913, and the bill of sale and notes and chattel mortgage accompany-

ing the same, were as a matter of fact never delivered by the depository to the parties for whom they were intended, but before the time fixed for such delivery other papers executed by, and to, different parties were delivered in place thereof. Hence, as neither the contract signed August 4, 1913, nor any of the papers accompanying it were ever delivered, it is self-evident that these instruments never had any legal effect nor became binding upon the parties thereto. Because it is a general rule (in this state prescribed by statute), that "a written instrument has no legal inception or valid existence until it has been delivered in accordance with the intention of the parties." See §§ 5891 and 6901, Compiled Laws, and Stockton v. Turner, 30 N. D. 641, 153 N. W. 275. The plaintiff, Guild, testifies that these instruments were afterwards destroyed, and this is not denied by any other witness. Hence, it seems quite clear that the parties intentionally abandoned the escrow arrangement and consummated a deal along other lines.

One Metcalf was called as a witness for plaintiff and permitted to testify in regard to certain negotiations which he had with the defendant, More, in the spring of 1913, for the purchase of the Courier-News plant. Appellant asserts that this transaction was too remote in point of time, and in no manner relevant to the issues involved in this action, and that therefore the admission of evidence relative thereto constituted prejudicial error. Metcalf's testimony showed that he was a newspaper man of considerable experience. That in the spring of 1913 he entered into negotiations with More for the purchase of the Courier-News, and, together with one Baker, obtained an option contract therefore from More, and paid More $250, as earnest money. That, thereafter, he (Metcalf) worked on the paper for about ten weeks, and, while so engaged, examined the various books and records of the concern and found that at least $5,000 of the subscription accounts had prior thereto been in the hands of a collection agency for collection, and returned by such agency as uncollectable. That a large number of the subscription accounts were from four to six years old. That the books showed that during the eight months of More's ownership prior to Metcalf's investigation, the paper had been operated at a loss of about $11,000, which deficit had been made good by More. Metcalf further testified that, after discovering this condition of affairs, he had an interview with the defendant, More, about the middle of June, 1913, and informed

him fully of the result of his investigation, and refused to proceed with the purchase, and that thereupon the defendant, More, returned the money paid by Metcalf.

We are unable to see how it can be seriously contended that this testimony was inadmissible. Among the vital questions at issue in this lawsuit was the following: "Did More *knowingly* misrepresent or conceal certain material facts for the purpose and with the intent of inducing Guild to purchase an interest in the Courier-News, and pay over to More, $20,000 ?" The testimony in question had a direct bearing on More's knowledge of the financial condition of the paper. It tended to show that he was fully informed of the fact that it was losing money, and that a large portion of the subscription accounts were worthless. The fact that Metcalf informed him of these matters in June, 1913, would obviously be competent evidence to show that More was possessed of this knowledge during his negotiations with Guild in August, 1913.

In speaking on this subject, in Bottomley v. United States, 1 Story, 135, Fed. Cas. No. 1689, the distinguished jurist, Judge Story, said: "Wherever the intent or guilty knowledge of a party is a material ingredient in the issue of a case, these collateral facts, tending to establish such intent or knowledge, are proper evidence. In many cases of fraud it would be otherwise impossible satisfactorily to establish the true nature and character of the act."

The evidence in question was clearly competent for the purpose of showing knowledge on the part of More. Elliott, Ev. § 2141; Jones, Ev. § 142; 6 Enc. Ev. 26; 20 Cyc. 119; See also Mutual L. Ins. Co. v. Armstrong, 117 U. S. 591, 29 L. ed. 997, 6 Sup. Ct. Rep. 877; Penn Mut. L. Ins. Co. v. Mechanics Sav. Bank & T. Co. 38 L.R.A. 33, 19 C. C. A. 286, 37 U. S. App. 692, 72 Fed. 413.

10. During October and November, 1913, the plaintiff sought to make a sale of his interest in the Courier-News through the agency of a newspaper broker named Heinrichs. Defendant's counsel demanded and received from plaintiff the entire correspondence between plaintiff and Heinrichs regarding this matter. They then selected five letters and a telegram from plaintiff to Heinrichs, and offered the same in evidence as a part of their cross-examination of the plaintiff, Guild, for the purpose of impeaching his testimony. Plaintiff's counsel thereupon offered the remainder of the correspondence. The correspondence all

related to the same proposed transaction, and referred to a prospective purchaser. In one of the letters from Heinrichs to Guild, he refers to a letter from the prospective purchaser, saying among other things: "I am inclosing a letter. . . . The inclosed letter from C. A. Stedman will explain itself." The Stedman letter so inclosed was among the correspondence so offered by plaintiff's counsel. It is now asserted that the admission of this letter constituted prejudicial error. We are unable to find any merit in appellant's contention. The Stedman letter was part of the correspondence. The letter from Heinrichs to Guild, with which it was inclosed, clearly shows that it cannot be fully understood unless the letter inclosed is read in connection therewith. Defendant's counsel had the entire correspondence in their possession. They knew its contents. They selected and offered in evidence a few selected, isolated letters out of a series of letters relating to the same transaction. The letters were offered for the purpose of impeaching Guild's testimony, by showing that certain statements in the letters offered were contrary to statements made by Guild during the trial. It seems obvious that the most elemental rules of justice and fair play would permit him to introduce the whole of the correspondence so that the jury would have, not a few isolated statements, but all the statements made, and thus be enabled to say whether, taking the correspondence as a whole, Guild did make any statements therein contrary to those made at the trial.

Rules of evidence were formulated to aid the court and jury in ascertaining the truth in disputed transactions. If a part of a conversation, or portions of a letter, or a few selected letters from an entire correspondence, could be selected and offered in evidence, and the remainder excluded, it would seldom establish the truth, but would give an imperfect and frequently a distorted and erroneous idea of the conversation, letter, or correspondence under consideration. Isolated words do not convey the meaning of a sentence; and it is no more likely that part of a conversation, portions of a writing, or a few letters out of a correspondence, will disclose the meaning and intention of the parties as expressed by them in such conversation, writing, or correspondence. Hence, it is one of the fundamental rules of evidence, that where one party uses as evidence statements made during a conversation, or a number of a series of letters written, by the party sought to be charged

or affected thereby, then the latter may offer the remainder of the conversation or correspondence relating to the transaction or question in issue. Jones, Ev. § 294; 17 Cyc. 408; Anderson v. First Nat. Bank, 4 N. D. 182, 59 N. W. 1029; Thayer v. Hoffman, 53 Kan. 723, 37 Pac. 125; and Stringer v. Breen, 7 Ind. App. 557, 34 N. E. 1015. See also Abbott, Civil Trial Brief, 3d ed. pp. 309, 310, and authorities cited.

The Stedman letter was part of this correspondence. It was directly referred to in other letters. Much of the correspondence would be misleading and confusing without it. It was necessary that the jury should know the contents of this letter in order to fully understand the remainder of the correspondence, and to determine whether plaintiff did as a matter of fact in this correspondence make any statements contrary to his testimony at the trial. "Where a writing offered refers to another writing, the latter should also be put in at the same time, provided the reference is such as to make it probable that the latter is requisite to a full understanding of the effect of the former." Wigmore, Ev. § 2104. See also Wigmore, Ev. § 2120; 17 Cyc. 365; United Iron Works v. Outer Harbor Dock & Wharf Co. 168 Cal. 81, 141 Pac. 917; McDonnell v. Huffine, 44 Mont. 411, 120 Pac. 792. Defendant's counsel, by offering a portion of the correspondence between Guild and Heinrichs, opened the door for their adversary to introduce the remainder of the correspondence, relative to the same transaction. No error was committed in the admission of this testimony.

Error is also assigned upon the admission in evidence of two letters or written notices, dated October 7 and 9, 1913, respectively, delivered by Guild to More, tendering a return to More of the stock, and demanding a return to Guild of the money paid. Plaintiff alleged in his complaint that "he notified the defendant that he had been defrauded, and that the facts had been misrepresented, and that he repudiated the transaction; that at defendant's request he, the plaintiff, continued to edit and manage the paper and to avoid sacrifice and injury to the paper, as well as embarrassment to the defendant, he waived his proposed rescission and is still continuing to edit and manage the paper; that he has elected to hold said defendant for such damage as this defendant has caused him through the fraud and deceit."

The defendant by his answer put this allegation in issue. Hence, it was proper for the plaintiff to offer evidence bearing on this contro-

verted issue of fact. Just before the written notices **were** offered, plaintiff had been stating when he discovered the fraud, and what he discovered, and that he thereupon called these matters to More's attention. And while testifying to such conversations, he stated that he served notice upon More that he (plaintiff) would demand a rescission. Defendant's counsel thereupon moved that this testimony be stricken out.

The motion and the court's ruling thereon as shown by the record are as follows:

By Mr. Pollock: Just a moment. We ask that this be stricken out as not *the best evidence;* not responsive.

By the Court: Well that is sustained. You have the written notice there?

By Judge Young: Yes.

By the Court: Then it is sustained.

Whereupon plaintiff's counsel, conforming to the court's ruling, offered the written notices wherein plaintiff demanded a return of the money paid to defendant, and tendered to defendant the 260 shares of stock, which plaintiff had received from More. No error was committed in admitting this evidence.

Error is assigned on the refusal of the court to give a certain instruction, and submit a proposed question to the jury. Neither the requested instruction nor the proposed question were incorporated in the statement of case. Respondent insists that these matters are not part of the record in a civil action, unless incorporated in the statement of case. Appellant, however, contends that under the provisions of the 1913 practice act all requested instructions, whether given or refused, become part of the judgment roll and therefore need not be incorporated in the statement of case.

Under the laws of this state, prior to the enactment of the new practice act in 1913, neither the instructions nor the requests for instructions constituted part of the judgment roll, and, hence, could not be reviewed on appeal unless incorporated in the statement of case. See Kinney v. Brotherhood of American Yeoman, 15 N. D. 21, 31, 106 N. W. 44. The former law was amended in 1913 and the following provision incorporated: "All instructions of the court to the jury, when

filed in the office of the clerk of said court, shall be deemed a part of the judgment roll." Comp. Laws, 1913, § 7689. It is conceded that requests for instructions do not become part of the judgment roll unless they are made so by virtue of the section quoted. The language of this section is plain. There seems indeed to be little, if any, need of judicial construction. It provides that *all the court's instructions to the jury* shall be deemed a part of the judgment roll. This obviously refers to the instructions actually given and which guided the jury in its deliberations. These instructions, it is true, may consist partly of matter requested by either or both sides, but such requested instructions do not become a part of the court's instructions to the jury unless the request is granted and the proposed instructions actually given to the jury.

Appellant's counsel has requested that in the event this court shall hold that the request to instruct and to submit the proposed question to the jury are not subject to review on appeal unless incorporated in the statement of case, that then this court in the exercise of its discretion permit the record to be remanded to the district court in order that such matters may be incorporated in the statement of case. This request must be denied, as we are entirely satisfied from an examination of the proposed instruction and questions as printed in appellant's brief that the trial court committed no error in denying these requests.

14. Appellant asserts that the trial court erred in giving the following instruction: "I will now take up the question of fraud and deceit. Here again the burden of proof falls upon the plaintiff to show by a fair preponderance of the evidence the fraud and deceit which he has alleged in his complaint [here the court refers to the various representations and suppressions charged]. Has the plaintiff by a fair preponderance of the evidence shown the intentional and wilful falsity of such statements, their fraudulent and deceitful character, and his, plaintiff's, reliance thereon, and the same with reference to the alleged suppressions."

Appellant's position is stated in his brief as follows: "The gist of the error we complain of is embodied in the following sentence from the above charge." Here again the burden of proof falls upon the plaintiff to show by a *fair preponderance* of the evidence the fraud and deceit which he has alleged in his complaint. We contend that this does not correctly state the law as to the burden of proof which rests upon plaintiff.

The court's instructions should be considered as a whole. The instruction complained of was only a part of the court's instructions to the jury on the subject under consideration. The court, after calling the jury's attention to the various representations and suppressions charged in the complaint, instructed the jury as follows: "Has the plaintiff by a fair preponderance of the evidence shown *the intentional and wilful falsity of such statements, their fraudulent and deceitful character, and his, plaintiff's, reliance thereon and the same with reference to the alleged suppression?*

"At the threshold of this inquiry I charge you, gentlemen of the jury, that fraud and deceit are never to be presumed, but must be affirmatively proven by the party alleging the same. *The law presumes that all men are fair and honest; that their dealings are in good faith and without intention to cheat or defraud others.* Where a transaction called in question is equally capable of two constructions,—one that is fair and honest, and one that is dishonest,—then the law is that the fair and honest construction must prevail, and the transaction called in question must be presumed to be fair and honest." The trial court carefully explained what was meant by the burden of proof, and with reference to the application thereof in this particular case instructed the jury as follows: "In a word, the rule that the law imposes upon a party charging fraud being *that he shall produce sufficient evidence to satisfy the judgment and conscience of the jury of the truth of the charge.* Fraud is fully proved by evidence that satisfies the conscience of a common man so that he would act upon his conviction in matters of the highest importance to his one interest."

In connection with the preponderance of evidence the trial court, after carefully defining the term "preponderance," instructed the jury as follows: "The law says that unless, upon the various matters where I have stated that the plaintiff has the burden of proof, he satisfies you of the correctness of the facts as alleged by him to such an extent that his proof outweighs the proof of the defendant, he cannot prevail in the instances where he has not so satisfied you. In other words, if the testimony is evenly balanced, it shows that there is some doubt in your mind; that it is not sufficient; that is, if the testimony of the defendant weighs just the same as that of the plaintiff, you must find for the defendant upon that question."

The court's instructions gave the defendant the benefit of the presumption of honesty and fair dealing, and placed upon the plaintiff the burden of proving by a preponderance of the evidence, every material element of the cause of action. These instructions were not prejudicial to defendant, and he has no just cause of complaint. 17 Cyc. 760; 20 Cyc. 109.

15–17. Appellant, also, asserts that the following instructions were erroneous: "The ground of this kind of redress is not the merit of the plaintiff, but the demerit of defendant; it being the law that one who chooses to make positive assertions without warrant shall not excuse himself by saying that the other party need not have relied upon them. The defendant must show that his representations were not in fact relied upon, if such representations and their falsity have been proved by the plaintiff.

"In short, nothing will excuse culpable misrepresentations, if you find any were made, short of proof that they were not relied on, either because the other party knew the truth, or because he relied wholly on his own investigation, or because the alleged fact did not influence his action at all; and the burden of proving that false statements were not relied on is on the person who has been proved guilty of material misrepresentations." The specific objections made to these instructions in the court below were that they did not properly state the law, were inapplicable to the facts in the case, in conflict with other portions of the charge, and in effect placed the burden of proof upon the defendant. The latter objection is the only one urged in this court, and hence is the only one which we will consider.

The plaintiff testified that he relied solely and absolutely upon the representations made by the defendant. Defendant, as part of his defense, offered evidence tending to show that plaintiff was given an opportunity to investigate, and did investigate, the books and property of the Courier-News, and had an opportunity to inform himself of the facts, and hence either know or should have known the falsity of the alleged representations. This testimony was offered by defendant for the purpose of rebutting the contention that the misrepresentations alleged provided the inducement which caused plaintiff to make the purchase. As stated by appellant in his brief: "The theory of defendant was that, even admitting that there had been fraudulent representations

or concealments which induced the making of the contract, Ex. 17, that nevertheless plaintiff undertook to make and in fact made a thorough investigation before signing the contract, and relied solely upon such investigation, and not upon false representations, if any were made." This is denominated by appellant throughout his brief, and also upon oral argument as "defendant's affirmative defense."

·The instructions assailed are merely two short excerpts selected from the charge. We have already set out the court's instructions as to the burden of proof. The jury was therein specifically informed that the plaintiff had the burden of proving by a preponderance of the evidence, the facts alleged in his complaint, including his reliance on the alleged misrepresentations. In dealing with defendant's "affirmative defense," the court, after stating the contentions of the parties in respect thereto, immediately preceding the instructions assailed, instructed the jury as follows: "The question then naturally arises, first, Would the plaintiff be estopped from claiming that he was deceived and defrauded if, by a diligent, faithful, and searching examination of the plant, the books, and the records of the Courier-News, he could have discovered the falsity of the statements he claims defendant made? In that behalf, I charge you, gentlemen, that if you find false statements were made to plaintiff by defendant or his agent, and the falsity of the same was discovered by Mr. Guild by an examination of the books or plant of the company, then it would follow he could not claim to have been deceived and defrauded by such false statements, if any you find were made."

The court, in the parts of the charge here assailed, was dealing solely with "defendant's affirmative defense." For the purpose of submitting the same, it adopted the theory of the defense, as quoted from appellant's brief. The trial court was dealing with a case wherein it was conceded, or proved, that actionable false representations had been made,— a case wherein the defendant "had been proved guilty of material misrepresentations." The instructions complained of are expressly limited to a case of that nature. The court nowhere instructed the jury that the burden of proof rested on the defendant. On the contrary, the jury was expressly instructed that the burden of proof was upon the plaintiff to prove the facts alleged in the complaint by a preponderance of the evidence.

32 N. D.—30.

While it is true that plaintiff in this, as in every case, had the burden of proof throughout the case—so far as the material allegations in his complaint denied by the answer were concerned—still, it did not necessarily follow that he also had the "burden of evidence" throughout the case. Much confusion has arisen among the decisions of the various courts out of the fact that the term "burden of proof" is generally used by the courts in two senses. (1) In the first sense, when it is said that the burden of proof is on "A" that means that he will lose unless he shall at the close of the trial have brought down his end of the scale, by placing thereon a weight of evidence sufficient, first, to destroy the equilibrium; and, second, to overbalance any weight of evidence placed on the other end. (2) In the second sense, the necessity which rests on a party at any particular time during a trial to create a prima facie case in his own favor or to overthrow one when created against him. This necessity or burden devolves upon one party whenever under the evidence, or applicable presumptions, or a combination of these, the other party is entitled as a matter of law to a ruling in his favor. § 16 Cyc. 926; 2 Enc. Ev. 777, 808. In order to avoid this confusion, a number of courts have substituted some other phrase for the term "burden of proof" when used to express the second meaning. The terms most frequently used to express such second meaning are, "burden of evidence" and "weight of evidence." See Words & Phrases, 1st Series, and Words & Phrases, 2d Series, Cyc. uses the term "burden of proof" to express the first meaning, and the term "burden of evidence" to express the second meaning. And in showing the distinction between the two terms thus used it is said: "As the burden of proof is invariably determined by the rules of pleading, so the position of the burden of evidence is controlled by the logical necessities of making proof which a party is under at the time the question of its position becomes important; the burden of evidence being always upon that party against whom the decision of the tribunal would be given if no further evidence were introduced, or, to speak more accurately, if no evidence were introduced which the judge would permit the jury to consider as the basis of their verdict. It results from this that at the beginning of every trial the burden of proof and the burden of evidence are on the same party as to the existence of every fact essential to the affirmative case, including the credibility of the witnesses and the legal validity

and genuineness of documents adduced to support it. This burden of evidence so continues until the party with the burden of proof establishes a prima facie case, for nothing less than the latter will shift the burden of evidence. The party having the burden of proof may establish a prima facie case in several ways: (1) He may prove facts which give rise to an inference of that probative weight; or (2) he may establish the existence of some legal substitute for such an inference of fact; or (3) he may proceed by a combination of these methods as to the whole or different parts of his case. When such a prima facie case is established, the burden of evidence is then shifted upon the party who does not have the affirmative of the issue, the position of the burden of proof being in no way affected. Since affirmative action of the tribunal demands that the party who has the burden of proof shall at the end of the trial stand possessed of a prima facie case in his favor, the party who has not the affirmative of the issue succeeds, for the time being, if he can impair the prima facie quality of the case against him, and the burden of evidence thereupon returns to the party having the burden of proof; and this process continues until the stock of relevant facts is exhausted." 16 Cyc. 932.

So, in an action by a passenger against a company for personal injuries, the passenger has the burden of proof, but when he establishes that the injury was caused by the carrier's act in the operation of the train, he raises a presumption of negligence, and the burden of evidence is thereupon shifted upon the railway company, and it has the burden to rebut that presumption by showing that it was not negligent, or that the plaintiff, by the exercise of ordinary care on his part, could have avoided the consequences to himself of the negligence of the carrier. See Cody v. Market Street R. Co. 148 Cal. 90, 82 Pac. 666, 667.

And in an action for slander, the falsity of the words spoken is one of the vital questions, and the plaintiff must both allege and prove not only that the slanderous words were spoken, but also that they were false. 25 Cyc. 453. (Although as a general rule the words are presumed to be false, and such presumption is sufficient prima facie evidence of the falsity of the defamatory words. 25 Cyc. 491.) But, if defendant desires to defend on the ground that the defamatory words were true, he is required to plead and prove such fact. 25 Cyc. 459, 491.

By analogous reasoning it has been held that where a person makes material false representations concerning matters, and under circumstances, which from their nature or situation may be assumed to be within the peculiar knowledge, or under the power, of the party making the representations, the party to whom it is made has a right to rely on them; and it will be presumed that the party to whom such material, false representations were made, relied and acted thereon; "and, in the absence of any knowledge of his own, or of any facts which should arouse suspicion and cast doubt upon the truth of the representations, he is not bound to make inquiries and examination for himself." And as stated in Pomeroy's Equity Jurisprudence, § 891; "It does not, under such circumstances, lie in the mouth of the person asserting the fact to object or complain because the other took him at his word. If he claims that the other party was not misled, he is bound to show clearly that such party did know the real facts; the burden is on him of removing the presumption that such party relied and acted upon his statements." And in § 895 the same author says: "Where a representation is made of facts which are, or may be assumed to be, within the knowledge of the party making it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence."

In Sprague v. Taylor, 58 Conn. 542, 20 Atl. 612, the court said: "It is conceded, and is unquestionable, that the defendant's false representations need not have been the sole inducement which influenced Mrs. Sprague. Bigelow, Fraud, p. 544, and cases there cited. The plaintiff testified that she relied upon the defendant's representations. In such a case it is incumbent upon the defendant to prove that the false representations were not relied on. It is not enough for him to say that there were other representations or other circumstances which might have been the operative inducement. Kerr, Fraud & Mistake, 75; Opinion of Lord Justice Turner in Nicol's Case, 3 De G. & J. 439, 28 L. J. Ch. N. S. 257, 5 Jur. N. S. 205, 7 Week. Rep. 217;" See also: 20 Cyc. 109, 110; Charbonnel v. Seabury, 23 R. I. 543, 51 Atl. 208; Anderson v. Donahue, 116 Minn. 380, 133 N. W. 975; Hiner v. Richter, 51 Ill. 299; Hicks v. Stevens, 121 Ill. 186, 11 N. E. 241; Winans v. Winans, 19 N. J. Eq. 220.

This is in harmony with the decision of this court in Fargo Gas & Coke Co. v. Fargo Gas & E. Co. 4 N. D. 219, 37 L.R.A. 593, 59 N. W. 1066, holding that "ordinarily, one who buys property has a right implicitly to rely upon representations of the seller; and, if they were false and made with intent to deceive the purchaser, the seller will not be allowed to urge that the buyer, by investigation, could have discovered their falsity." And, also, in harmony with the decision of this court in Liland v. Tweto, 19 N. D. 551, 573, 125 N. W. 1032, in which this court held that "the burden of proof and knowledge of the facts giving rise to the right to rescind and of the time of acquiring such knowledge rests on the defendant." See also 6 Enc. Ev. 70, 72; 8 Enc. Pl. & Pr. 908; 16 Cyc. 929.

Under the express language of the instructions assailed, they became applicable only in case defendant "had been proved guilty of material misrepresentation." In which case alone "defendant's affirmative defense" became material. Taking the instructions as a whole, they were not incorrect as misplacing the burden of proof. In this case we are dealing with a special verdict. The jury was required to find specifically on certain disputed questions. In connection with each representation the jury was required to answer this question: "Did plaintiff believe in and rely upon such statement, so made, in making the purchase of an interest in the Courier-News, or in purchasing from the defendant an interest in the Courier-News?"

The court elsewhere in its instructions informed the jury that the plaintiff had the burden of proving the fact that he relied on the representations. And in that part of the instructions, referring to the different questions on which findings were required, the court said: "It is highly essential and an important matter to determine whether in each instance the plaintiff believed in and relied upon statements made to him, if any, in the transactions referred to, and a distinct answer will have to be made to that sub-question marked (e) in the several questions."

We are agreed that, taking the court's instructions as a whole, the objection urged by appellant to the instructions in consideration is not well taken. This disposes of the errors assigned upon the instructions, fairly arising upon the record and presented for our determination on this appeal. The remainder of the errors assigned upon the instructions

are so devoid of merit as to require no extended discussion in this opinion. All have been considered, and we are all agreed, that the instructions in this case, when considered as a whole, are not subject to attack upon any of the grounds assigned by appellant.

In the specifications served with the notice of appeal, only one finding is attacked as unsupported by the evidence; namely, the finding that the defendant represented the different items of property as having certain values aggregating in all a total value of $73,000. We believe there is sufficient competent testimony to sustain this finding.

A number of assignments of error are predicated upon the court's rulings on the admission of evidence, the overruling of defendant's objections to the special verdict, and the denial of defendant's motion to change the answers to certain findings. These various assignments, however, are all based upon the contention that some of the representations set forth in the complaint were not material, and, if material, were not established by sufficient competent testimony. In order to properly consider these assignments, it is necessary to refer at some length to the proceedings had in the court below.

The record shows that copies of the instructions, and the special verdict, were delivered to counsel for the respective parties on May 19, 1914. On May 21, 1914, the trial court required counsel to make their objections, if any, to the charge and special verdict. Defendant's counsel dictated to the court stenographer certain objections to certain portions of the instructions, stating that written objections would be subsequently filed. Thereafter the court asked counsel if they had any objections to make to the special verdict. Plaintiff's counsel stated that they had none to offer. Defendant's counsel stated that they had not examined the questions, and did not suppose that they would be required to make any objections. The court thereupon announced that it would take a recess for three hours to enable counsel to make any desired objections to the questions. Defendant's counsel thereupon made the following statement: "For the purpose of the record the defendant states that, under the statute as he understands it, the court has no power or authority to require the defendant to make objections to the form of the questions or to the special verdict in any particular; that the statute casts that burden upon the court to prepare the special verdict, and nowhere gives the court authority to delegate that burden

to counsel for either of the parties, nor should the counsel be required to make objections to the special verdict and thus be placed in the position of determining the character and nature and sufficiency of the special verdict, in determining a matter which is placed by statute expressly upon the court; and in this case counsel for the defendant state that they have endeavored to be of all the assistance they could to the court in framing the special verdict, and have offered one question to be embodied in the special verdict, which has been presented to the court and which counsel suggested to the court should be embodied in the special verdict, but counsel do not believe that under the statute, in the protection of their client's rights, that they should be required or held to take or make any objections or exceptions at this time as to the special verdict."

To which the trial judge replied as follows: "In response to the suggestion of counsel the court will say that up to the present time counsel, as stated by him, has only made one request for or submitted but one question, and that was submitted some two weeks ago when we took the adjournment and before the testimony was all introduced. The court further states that he has requested counsel for both parties to make any suggestions with reference to questions that they desire, and will still keep this question open until 3 o'clock this afternoon, and if counsel desires to make any requests or any objection he will hear him at that time. Otherwise the questions will be as already prepared, with the addition of one further with reference to the verdict." The case was submitted to the jury on May 25, 1914, and the verdict returned May 26, 1914. No motion was ever made to strike out any of the allegations of the complaint now under consideration. No request was made to eliminate from the jury's consideration any of the questions of fact, or to instruct the jury to answer any question in favor of the defendant; but defendant's counsel permitted all the questions proposed by the trial court to be submitted to the jury without objection. The objections under consideration were raised for the first time after the verdict had been recorded and the jury discharged. At that time defendant's counsel filed certain written objections to the verdict and moved that the answers to some of the questions be changed. The trial court refused to change the answers, and overruled the objections to the verdict, and entered judgment in favor of plaintiff.

As stated, appellant contends that some of the false representations charged in the complaint were not actionable. Under the laws of this state actionable deceit consists in any of the following acts committed by one who thereby wilfully deceives another with intent to induce him to alter his position to his injury or risk:

1. The suggestion as a fact of that which is not true by one who does not believe it to be true.

2. The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or,

4. A promise made without any intention of performing. See §§ 5943, 5944, Comp. Laws 1913.

18–20. "The representations and suppressions in question were alleged in the complaint and denied by the answer. Defendant's counsel permitted the trial court to submit these questions to the jury without objection, although counsel were given a specific opportunity to object to every question submitted. The special verdict is not attacked, either on the ground that the court failed to submit, or that the jury failed to pass on, all material and controverted questions. Nor is there any contention that the findings of the jury are in any manner inconsistent. Nor is it contended that some of the representations found to have been made are not material, but defendant's sole contention is, that some of the representations and suppressions which the jury found to have been made were not in themselves actionable and that for that reason the verdict must fall. It is true that a special verdict must contain findings on all the material disputed facts, upon which the law is to arise and the judgment of the court to rest. But the application of that principle does not defeat the verdict or warrant a reversal of the judgment in this case, because in this case, there are sufficient findings, unchallenged, and concededly sustained by the evidence, to entitle plaintiff to judgment. The only complaint made by the defendant in this case is that the jury, in addition to finding that defendant made false representations, which were actionable, also found that. he made other false representations, which were not actionable. Is plaintiff's right of recovery to be lessened or impaired because the

jury, at defendant's request and with his permission, were permitted to consider the issues framed by the pleadings? Is plaintiff's right of recovery impaired because the jury, under these circumstances, found that the defendant, in addition to making actionable representations, also, made others which were not actionable? We think not. Such doctrine would hardly promote the ends of justice. .

The court submitted to the jury for determination all questions relative to the misrepresentations charged. Among the questions so submitted was whether the various representations made by More to Guild were in fact material. In this connection the court instructed the jury that "the evidence must show that the alleged false or fraudulent representations were willfully and intentionally made regarding something which had already transpired, or was then alleged to exist. No statement of one's opinion as to what will or will not happen or exist in the future can be considered by you in making up your judgment in this case whether fraudulent representations have in fact been made. Every person in making a contract is at liberty to speculate or express opinions as to future events, and he cannot be held to answer for their truth or falsity." Ordinarily the question of materiality is one of fact for the jury. 14 Am. & Eng. Enc. Law, 207; 20 Cyc. 124. In this case this question was so submitted under instructions, the correctness of which have not been challenged. The jury found that the representations made were all material.

The view which we are compelled to take of this matter, however, renders it unnecessary for us to determine whether all of the various misrepresentations and suppressions charged are actionable. It is sufficient to say that some of the false representations found to have been made are concededly actionable. If it be assumed that some of these representations were not material, or not established by the evidence, then the effect would be the same as if the jury had returned its findings that these particular charges were not proven. · The failure to prove such allegations of. plaintiff's complaint would not defeat his right of recovery. "It is not necessary, however for plaintiff to prove all the fraudulent misrepresentations alleged, but only such allegations as to the means used to deceive him as are ·necessary and sufficient to support his cause of action." 20 Cyc. 107. See also Long v. Davis, 136 Iowa, 734, 114 N. W. 197.

But even if the jury had gone farther than that, and answered all the questions under consideration in favor of the defendant, still such answers would not be inconsistent with the answers contained in the remainder of the findings, and would in no manner affect or defeat plaintiff's right of recovery; but plaintiff would still be entitled to judgment upon all the facts as found by the jury. This being so, appellant's assignments of error predicated upon these propositions are not well taken.

In the case of Robinson v. Washburn, 81 Wis. 404, 407, 51 N. W. 578, the court said: "When the merits of an action have been determined by special answers to questions submitted, the verdict should not be held defective and rejected by reason of the failure to answer other questions, or any inconsistency in the answers given which do not and cannot in any way qualify or limit the answers upon which the right of either of the parties to a judgment in his favor is made clear."

And in Bush v. Maxwell, 79 Wis. 114, 125, 48 N. W. 250: "It is urged by the learned counsel for the appellant that the failure of the jury to answer some of the questions submitted to them is fatal to the judgment. We think a failure of the jury to answer questions submitted to them does not render the verdict insufficient to sustain the judgment, unless the answer to such questions favorably to the party against whom the judgment is rendered would necessarily make such judgment erroneous." See also Coggswell v. Davis, 65 Wis. 191, 206, 26 N. W. 557; Nelson v. Chicago, M. & St. P. R. Co. 60 Wis. 321, 328, 19 N. W. 52; Farwell v. Warren, 76 Wis. 527, 540, 45 N. W. 217; Schrubbe v. Connell, 69 Wis. 476, 34 N. W. 503; Geisinger v. Beyl, 80 Wis. 443, 50 N. W. 501; McDermott v. Chicago, M. & St. P. R. Co. 91 Wis. 39, 64 N. W. 430; Knowlton v. Milwaukee City R. Co. 59 Wis. 278, 18 N. W. 17; Singer Mfg. Co. v. Sammons, 49 Wis. 316, 5 N. W. 788; Mills & L. C. Lumber Co. v. Chicago, St. P. M. & O. R. Co. 94 Wis. 336, 68 N. W. 996; 38 Cyc. 1924.

Appellant contends, however, that these representations were considered by the jury in fixing the represented value of the property, and that therefore "if any one representation is immaterial" that then the entire verdict must fall. Appellant's contention is without merit, under the evidence and the findings of the jury in this case. The jury found that if the representations of the defendant had been true, the

property on August 29, 1913, would have had an actual value of $45,-000. This is the most favorable finding to defendant that could possibly be made. No smaller represented value could have been fixed, under the evidence in this case. No one contended that the property was represented as having a lesser value. While the testimony offered by plaintiff tended to show that, if the representations had been true, the property would have had a much greater value,—even as much as $73,000. And defendant offered testimony tending to show that the property at the time of the sale had an actual value of $45,000 and over. The jury in its findings gave the defendant the benefit of all doubt, and fixed the value of the property as represented, at the actual price fixed by the parties in their dealings. The jury said that, if the property had been as represented, Guild's interest therein would have been worth what he paid for it, and no more.

21. It also seems self-evident that if the objections urged ever had any merit, they could not be raised for the first time after trial and verdict. If certain allegations of the complaint were irrelevant, defendant should have moved to strike them. Comp. Laws 1913, § 7459; 31 Cyc. 637. And having failed to urge the objection to such allegations at the proper time, he cannot be heard to object after the return of the verdict and the discharge of the jury. 31 Cyc. 717, 718, 763 et seq.; 38 Cyc. 1932. See also Hart v. Wyndmere, 21 N. D. 383, 409, 131 N. W. 271, Ann. Cas. 1913D, 169; Hrouska v. Janke, 66 Wis. 252, 28 N. W. 166.

22. If the evidence was insufficient, defendant's counsel should have requested the court either to eliminate these questions from the jury's consideration, or to instruct the jury to make certain answers thereto (see Kolka v. Jones, 6 N. D. 461, 66 Am. St. Rep. 615, 71 N. W. 558; Nokken v. Avery Mfg. Co. 11 N. D. 399, 403, 92 N. W. 487); or served with his notice of appeal specifications of the insufficiency of the evidence (Comp. Laws § 7656). Having failed to challenge the sufficiency of the evidence to sustain these answers in any proper manner, they are binding upon the parties. 38 Cyc. 1931.

23. Appellant also asserts that the trial court erred in permitting counsel to use copies of the special verdict during their arguments to the jury. Arguments of counsel are intended to aid the jury in determining the truth in disputed transactions. In this case, the jury was

required to determine specific questions of fact. In order that counsel might argue the case intelligently, it was desirable that they should know what specific questions would be submitted to the jury. Clearly there was no error in permitting counsel to know what questions would be so submitted in order that counsel might confine their arguments to the specific matters to be determined by the jury. In fact it is required by statute that a special verdict must be demanded before argument. See § 7633, Comp. Laws. Hence the framers of this law contemplated that both the court and the parties should know before argument whether the jury would be required to return a general or special verdict.

Appellant's counsel, however, contends that in this manner counsel would be enabled to inform the jury of the legal effect of their answers. An argument whereby the jury is informed of the effect any particular answer or answers would have upon the ultimate rights of the parties would doubtless be improper. But there is no showing that such argument was made by any counsel in this case. This assignment of error is predicated solely upon a statement appearing in the record, made by the trial judge some time prior to argument, to the effect that he would permit counsel to have and use copies of the proposed special verdict during the argument to the jury. There is nothing in the record to show either that counsel availed themselves of this privilege, or abused it. A party predicating error upon improper argument to the jury has the burden of proving affirmatively, by the record presented to the appellate court, facts constituting such error. In this case the record fails to disclose any error whatsoever, but we are asked to presume that counsel was permitted by the trial court to make an improper argument. The presumption, however, is to the contrary.

24. Appellant, also, contends that the trial court adopted an erroneous method of computation in assessing damages against the defendant. Only 360 shares of the corporate stock of the corporation had been issued. The holders of these 360 shares owned the entire property of the Courier-News Corporation. Guild owned 260 shares, and More 100 shares of stock. The jury found that the actual cash value of the assets of the Courier-News Corporation, on August 29, 1913, including all property transferred to it by the defendant, More, and exclusive of the $3,000 loaned to the corporation by More on that day, was $30,500.

It also found that, if the representations had been true, the property in question would have been worth $45,000. The difference between the represented and actual value as found by the jury was $14,500. This difference in value or damage affected all the stock issued. The loss of $14,500 divided among 360 shares, the number issued, gave a loss of $40.27 plus per share. This loss of $14,500 was apportioned between Guild and More, the owners of the stock, as follows: More, 100 shares, $4,028; Guild, 260 shares, $10,472. Guild was only interested in the damage he sustained through the difference in value of his 260 shares, and this is exactly what the court allowed him. We believe that the trial court's method of computing damages was correct.

Certain objections were urged by respondent's counsel against the consideration of the merits of the appeal. Some of such objections were not without apparent merit, but the different defects were such that they could have been cured by amendment. And so, in view of the importance of the litigation, we deem it our duty, in the interests of justice, to consider the merits of the different questions presented, and having done so, it is unnecessary to discuss or decide the questions raised by respondent.

The issues of fact in this case were fully and fairly submitted to a jury. The jury, at defendant's request, was required to find, and did find, specifically upon every question of fact presented by the pleadings. The answers of the jury, to the different questions propounded, were clear and unequivocal, and indicated a thorough understanding and consideration of the questions submitted. Where the evidence was in conflict, the jury said that the plaintiff was right and the defendant wrong. The findings of the jury, based upon testimony, the sufficiency of which is not challenged, entitled plaintiff to the judgment which he received in the court below. The judgment appealed from must be affirmed. It is so ordered.

BURKE, J., dissenting. I cannot agree with the majority opinion, nor with the result therein announced. In particular I believe it was prejudicial error in the trial court to give the instruction treated in ¶ 17 of the syllabus of the majority opinion. Plaintiff had the burden of showing, first, that the misrepresentations were made to him by defendant; second, that he relied thereon. Notwithstanding this fact,

the jury was, in effect, told that if the defendant had been proved guilty of material misrepresentations, the burden shifted to him to show that plaintiff did not rely thereon. This is the last instruction given, and was intended to, and did, modify the general instruction that the burden of proof was in all things upon the plaintiff. Thus the court, in effect, told the jury that the defendant must disprove one of the things that it is conceded plaintiff should have proved. This clearly misplaces the burden of proof and was very prejudicial to the defendant. For this reason alone I think a new trial should be granted.